## W. M. BROWN v. S. G. SNEED ET AL.

### No. 6561.

1. **Limitation Against the State.**—The statute of limitation of four years does not run against an action upon the official bond of the chief clerk of the Comptroller's Office.

2. **Same.**—Unless so declared in a statute of limitations such statute will not run against the government.

3. **Same—Construction.**—That the statute in express terms makes an exception in favor of the State in suits for land does not imply that as to other actions the statute would run against the State.

4. **Liability of Sureties on Official Bond.**—Liability of sureties upon an official bond is limited to responsibility for the acts of the official as prescribed by law at the execution of the bond.

5. **Same.**—Extra or other duties not germane to those of the officer at the making of his bond can not be imposed upon him so as to affect the liabilities of his sureties. See facts.

6. **Liability of Officer.**—The chief clerk in Comptroller's Office having assumed duties in the performance of which a deficit of State funds occurred, is responsible to the State, as also is his principal, the Comptroller.

7. **Joint Liability.**—While the Comptroller and the clerk are both liable to the State, and may be sued jointly or severally, but one satisfaction can be had.

APPEAL from Travis.　Tried below before Hon. A. S. Walker.

This was a suit by ex-Comptroller Brown against Sneed, his chief clerk, and his sureties to fix liability of the defendants upon their bond, which was the official bond of said chief clerk.　Suit was filed January 14, 1887, and alleged that judgment had been rendered at suit of the State against plaintiff as Comptroller and his sureties for an alleged deficit in the tax

department in said office. It was alleged that Sneed as chief clerk had charge of the tax department.

The district attorney in behalf of the State intervened. The plaintiff and intervenor jointly asked judgment against defendants. It was alleged that defendant Sneed entered upon the duties of his office January 19, 1881, and held the office of chief clerk under plaintiff until January 16, 1883.

The defendants demurred and pleaded the statute of limitations. The demurrer was sustained. Judgment was rendered for defendants, and the plaintiff appealed.

Other facts sufficiently appear in the opinion.

*Goodrich & Clarkson,* for appellant. —1. Any person who by virtue of his office or employment receives into his custody the money of his principal must account for the same, and his failure to do so constitutes a breach of trust; and if such person has given bond for the faithful performance of his duties, both he and his sureties are liable and may be sued. Const., art. 3, secs. 20, 55; Const., art. 4, sec. 25; Crim. Code, art. 100. The chief clerk of Comptroller's Office is an officer. Rev. Stats., art. 2759.

2. The statute of limitation can not be pleaded against the State. Act July 4, 1879, sec. 16; Mellinger v. Houston, 68 Texas, 37; The Governor v. Albright, 21 Texas, 754; The State v. Purcell, 16 Texas, 305.

3. This suit became by the intervention of the State in form and substance a suit by the State, and under the facts alleged the plaintiff was entitled to have determined, as between him and the defendants, the question of ultimate liability for said deficit. 48 Texas, 120; 47 Texas, 583; Chicago v. Robbins, 2 Black, 418.

*J. S. Hogg,* Attorney-General, and *James H. Robertson,* for the State. 1. The statute of limitations can not be pleaded against the State. The Governor v. Albright, 21 Texas, 764; Mellinger v. Houston, 68 Texas, 37, applying sec. 16 of the Act of July 4, 1879.

2. Our statutes of limitation concerning adverse possession of land have always declared that the State shall not be barred, yet the presumptions that follow from great lapse of time have been held sufficient to transfer the title of the State to private individuals; but we know of no case except Scranton v. Bell, 35 Texas, 413, in which it was ever held that the statute of limitation could be set up against the State in any kind of a suit. Wood on Lim., sec. 52, and cases in note.

3. The facts alleged are sufficient to avoid the bar of the statute. Calhoun v. Burton, 64 Texas, 510, and cases cited; Munson v. Hallowell, 26 Texas, 475.

*D. W. Doom,* for appellees.—1. The bond upon which plaintiff brought

his suit was the official bond of the defendant S. G. Sneed as chief clerk in the Comptroller's Office, upon which the defendants Frank Hamilton and James R. Johnson were sureties, and, as required by law, was payable to the Governor of the State of Texas and his successors in office for the use of the State, and conditioned that the said S. G. Sneed should faithfully discharge the duties of his office, and plaintiff, a private individual, had no right of action upon it. Rev. Stat., arts. 2737–2759; McRea v. McWilliams, 58 Texas, 328.

2.   There were no allegations of a breach of the condition of the official bond of S. G. Sneed in intervenor's first amended original petition, and therefore defendant's general and special demurrers were properly sustained. Rev. Stats., arts. 2737, 2759; Act April 23, 1879, p. 155; Act April 1, 1881, p. 86; Ryan v. Morton, 65 Texas, 258; McRea v. McWilliams, 58 Texas, 328; Heidenheimer v. Brent, 59 Texas, 533; Murf. on Offi. Bonds, secs. 611, 718; Bensinger v. Wren, 100 Pa. St., 500; Denio v. State, 60 Miss., 949.

3.   The plaintiff, W. M. Brown, as Comptroller, could not impose on S. G. Sneed, as chief clerk, new and different duties from those required by law and bind the sureties on the bond, even though there was an understanding between Brown and Sneed before the latter's appointment that he should assume the new duties, unless the sureties were advised of such understanding.

4.   The right of the intervenor to bring suit on the bond was barred by statute of limitation of four years at the time of filing the original petition of intervention. Rev. Stats., arts. 3200, 3207; Act of July 4, 1879, sec. 16, p. 15; Pasch. Dig., arts. 4622, 4624, 3470; State v. Purcell, 16 Texas, 305; Governor v. Albright, 21 Texas, 753; Governor v. Burnett, 27 Texas, 33; Railway v. Travis County, 62 Texas, 16; Mellinger v. Houston, 68 Texas, 37.

5.   The facts alleged by intervenor to excuse the laches in bringing suit were not sufficient to prevent the running of the statute of limitation. Ransome v. Bearden, 50 Texas, 119; Kuhlman v. Baker, 50 Texas, 630, Connolly v. Hammond, 51 Texas, 635; Bremond v. McLean, 45 Texas, 10; Carlisle v. Hart, 27 Texas, 350; Connolly v. Hammond, 58 Texas, 11.

HOBBY, JUDGE.— The questions most material in this case are: First. Does the statute of limitation of four years run against the State, under our laws, in a suit on the official bond of the chief clerk of the Comptroller's Office? Second. Can additional duties be assumed by or devolved on said clerk other than those named in the statute or not incidental thereto, so as to extend the liabilities of the sureties? And this involves the question whether the pleadings in this case show that such additional duties were assumed by or imposed on him. Third. If said sureties are

released from liability under the bond, is said clerk liable? If so to whom, the State or the Comptroller in this suit?

There is nothing in our statutes of limitation, nor is there anything in the cases of The State v. Purcell, 16 Texas, and The Governor v. Albright, 21 Texas, and The State v. Burnett, 27 Texas, which in our opinion conclusively authorizes the inference that a change was intended to be effected in the well established and long recognized rule that unless the statute so expressly provides it can not be set up as a bar to any right or claim of the State. Wood on Lim., sec. 52.

At all events we do not think the authorities referred to justify holding in this action that the State is barred in four years. In the cases of The State v. Purcell and The State v. Burnett ten years had elapsed from the accrual of the cause of action. In the latter case ten years had elapsed before the filing of the amended petition. Reviewing the former case in The Governor v. Albright, 21 Texas, where the question now under consideration was directly before it, this court held that the statute of four years limitation would not run against the State in a suit on a tax collector's bond, and took occasion there to declare the general rule to be that the State is not bound by statutes of limitation unless provision be made in the statutes to that effect.

In the cases cited where the State was held to be barred, it was upon the ground of the lapse of time—ten years. It is not clear, however, why, if the statute of four years did not apply to the State in the cases of The State v. Purcell and The State v. Burnett for the reasons therein given, the lapse of ten years time should apply and preclude a recovery. The doctrine that laches is not imputable to the government was a controlling reason for the rule that limitation did not apply to the State unless it was included. The considerations of wise public policy which were supposed to uphold this doctrine rest upon the theory that the head of the government was engrossed with the cares and duties of State, and that the public should not therefore suffer by reason of the negligence of its servants.

Discussing this question the Supreme Court of the United States use this language: "In a representative government, where the people do not and can not act in a body, where their power is delegated to others and must of necessity be exercised by them if exercised at all, the reasons for applying these principles are equally cogent." United States v. Thompson, 8 Otto, 489. The principles referred to were embodied in the maxim to the effect that no time runs against the government.

It is upon this principle, "applicable alike to all governments necessarily acting through numerous agents and essential to the preservation of the interests and property of the public, that the statute of a State prescribing periods of time within which rights must be asserted are held

not to embrace the State itself unless expressly designated." Gibson v. Choteau, 13 Wall., 99.

It is argued that as the statute in express terms makes an exception in favor of the State in suits for land, the presumption is that this exception was not intended to apply to other suits.

In the case of The State v. Purcell the same reason was urged in the opinion in support of the doctrine that the statute did apply to the State in suits other than for land; and it is now contended that the absence of any exception in the statute in favor of the State in personal actions is tantamount to a legislative acquiescence in the doctrine announced in the case last cited.

This argument we think applies with equal vigor and reason to the doctrine in the case of The Governor v. Albright, because in that case the question involved and directly under consideration was, as in this case, whether the four years statute applied to the State; and the rule declared in reviewing the case of The State v. Purcell was that unless it is so expressly provided the statute does not apply to the State; and in that case the necessity for the adherence to this rule was rather deprecated, and the advantage of a statute applicable to the State in actions other than for land was, as well as its necessity, urged upon grounds of "sound public policy." But there has been no material change in the statute in this respect, although our present law was enacted since that decision, and presumably with the knowledge of the construction therein contained.

We would not therefore feel authorized to interpret the statutory silence upon this point in the chapter regulating limitation in personal actions as an indication that the State was included in that chapter. We conclude then that the statute of limitation of four years does not in this case apply to the State and is not well pleaded.

The duties which the chief clerk of the Comptroller's Office was required to perform by article 2759 of the Revised Statutes were "to keep the books of said office, and discharge the duties of the Comptroller whenever said office may become vacant by death, resignation, or otherwise, or whenever the Comptroller may be unavoidably absent or incapable from sickness to discharge said duties." Such only were specifically devolved on Sneed by the statute at the time of the execution of the bond by him and his sureties.

That it was not the purpose to include the duties pertaining to the "tax department" of the Comptroller's Office among those required of the chief clerk by article 2759, but rather the legislative intention to devolve them upon another and separate the duties of the tax department from those of the chief clerk, is indicated by the Act of April 2, 1881, passed a few months after the execution of the bond, making appropriations for the support of the State government covering the term of the Comptroller. This act provided and appropriated for "one tax clerk,

one tax sale clerk, one back tax clerk" in the Comptroller's Office in addition to the "chief clerk." Laws of 1881, p. 86.

Article 2759 required the chief clerk's bond to be conditioned "for the faithful performance of his duties." The condition of the bond sued on is that ",the said Sebron G. Sneed shall faithfully discharge the duties of his office."

It is alleged that among other duties required by law of Brown, he was required "to receive as Comptroller certain taxes and issue tax receipts therefor, and to cover the same so receipted into the Treasury. That for the conduct of this branch of the business of the office a 'tax department' had been established for many years. That at and before the date of Sneed's appointment as chief clerk, and prior to the execution of the bond, it was agreed and understood between Brown and Sneed that the duties pertaining to this tax department should be assigned to and performed by Sneed under the direction of Brown." The deficit is alleged to have occurred in this department under Sneed's administration, and through his neglect and misfeasance, etc., amounting to $4356.86, with interest, etc.

Many authorities have firmly settled the doctrine that the liability of sureties upon official bonds can not legitimately be extended beyond "the reasonably necessary import of the language" of the bond, or by inference be made to exceed their express undertaking, their liability being *strictissimi juris*. How far the language of a bond conditioned, as in this case, for the faithful performance of the officer's duties may be construed as an obligation including other duties than those mentioned in the statute at the time of its execution has been frequently discussed. Even the Legislature, it has been held, has no power to increase the risk of the surety by the imposition of additional duties, involving the receipt and disbursement of money, upon a clerk of a court whose duties under the statute were to "keep the records." Murf. on Off. Bonds, sec. 710.

The test of the liability of the sureties for the discharge by the principal of other duties than those named in the statute is made to depend on whether the subsequently imposed duties are similar in their nature to those named in the statute or usually incident to the office. Id.

The sureties on an official bond, however, do not stand altogether on the same footing as sureties on a private contract or obligation. In the latter the familiar rule is that any change in the contract without their consent releases them. But a bond for the faithful performance of his duties, or "according to law," under the rule above stated, includes all duties prescribed by laws germane to the matter and usually incident to the office. So the sureties on the bond of a clerk of a court were held not to be liable for money paid into his hands by executors, etc., because it was not in the line of his official duties as clerk of the court to receive

such money, and they were liable only for the performance of his official duties. Murf. on Off. Bonds, secs. 710, 711, *et seq.*

And where a bond was executed by sureties for the bookkeeper of a bank, conditioned that he should discharge the duties and trusts assigned to him as bookkeeper, and also the duties of "any other office relating to the business of the bank which he shall undertake to perform," and he was made teller of the bank, and in that capacity the default occurred, but none as bookkeeper, suit was brought on the bond, and it was held that the sureties were responsible only for his good conduct as bookkeeper. Murf. on Off. Bonds, sec. 80.

While we believe the above rule in its application to the sureties to be sound, we do not doubt the power of the Legislature by subsequent acts to prescribe additional duties germane or incident to the office, and that these duties would be embraced within the "reasonably necessary import" of the language of the bond conditioned for the "faithful discharge of his duties," and that in such a case the sureties could not claim that their liability had been extended beyond their undertaking. The additional duties, however, in this case devolved on Sneed, and not fairly contemplated, it is claimed, by the bond, were not imposed by the Legislature, but assumed by him, as alleged, under an agreement made with the Comptroller at and before the making of the bond that he should take control of the "tax department" of said office which had been created by a long established custom.

There can not, we think, be a recovery by the plaintiff or the intervenor under the allegations against the sureties on Sneed's bond, because it appears that the alleged deficit occurred while Sneed was in the performance of duties not prescribed or devolved on him by article 2759 of the Revised Statutes; and under the rule which forbids the extension of their liability to the performance of duties not fairly contemplated by their contract, Sneed's duties assumed by him under the agreement and understanding with Brown were different from those enforced by the statute, hence the sureties are not liable. The appropriation act of April, 1881, for this service would seem to imply that these duties were not to be performed by the chief clerk. The question then is as to the liability of Sneed himself; and if he be liable, to whom is he so liable under the pleadings in this case? Although the law did not require Sneed to perform the duties in the tax department of the Comptroller's Office, we do not think he would be relieved from liability upon this ground, as would his sureties. He having assumed the discharge of these duties, can not now claim exemption from liability on the ground that they were not devolved on him by law.

We do not understand that Sneed is liable to the State by reason of any relation existing between the Comptroller and the State. But we think he is financially liable to the State by reason of the assumption of duties by him, in the discharge of which, it is alleged, the deficit occurred.

Both Brown and Sneed are liable to the State for the same trespass, both or either may be sued, and a judgment against both or either may be obtained for the same trespass. But there can be but one satisfaction. The State in this case is entitled to a judgment against Sneed upon the allegations, and the fact that a judgment has been recovered against Brown can not be a defense to Sneed.

On the whole case our opinion is:

1.   That under our statutes of limitation, there being no express provision including the State in the chapter regulating limitation in personal actions, the statute of four years pleaded in this cause does not apply to the State.

2.   That the petition shows that the deficit occurred in the performance by Sneed of duties not devolved on him at the time of the execution of the bond by the statute (article 2759, Revised Statutes), and not fairly or usually incident to the office of chief clerk, and which extended the liability of the sureties beyond their express contract.   They are not liable in this suit.

3.   That Sneed having executed the bond to the State, and having undertaken and assumed the performance of the duties in the performance of which the deficit is alleged to have occurred, he is liable in this suit directly to the State and not to Brown.

4.   That Brown and Sneed both being liable to the State for the same trespass, a judgment may be obtained against both, but there can be but one satisfaction.

For the reasons mentioned in the opinion, we think the judgment should be reversed and the cause remanded.

*Reversed and remanded.*

Adopted May 20, 1890.