## STATE v. HATCHER et al. *
### No. 7669.

Court of Civil Appeals of Texas. Austin.
May 4, 1932.

Rehearing Denied June 1, 1932.

---

Long & Wortham, Moore & Moore, and Dohoney, Beauchamp & Lawrence, all of Paris, for appellants.

S. L. Staples, of Austin, and J. L. Zumwalt, of Dallas, for appellee Hatcher.

Geo. E. Shelley, of Austin, for appellee American Surety Co. of New York.

McCLENDON, C. J.

The state, upon the relation of the trustees of several common school districts in Lamar county, sued W. Gregory Hatcher and his surety (American Surety Company of New York) upon his official bond as state treasurer for negligent failure to collect a certified check and bank draft which had been remitted to him in his official capacity to pay off certain bonds issued by the several school districts and owned by the permanent school fund. The trial court sustained a general demurrer and several special exceptions to plaintiff's petition, and overruled several special exceptions to the answers of defendants. Plaintiff declined to amend, and has appealed from a judgment of dismissal.

The suit is predicated upon the following facts disclosed by the petition:

The permanent school fund held bonds of the several districts, of the aggregate principal and interest accruing to April 10, 1926, of $19,948; on which date some of the bonds matured and others did not. March 8, 1926, application was made to the board of education to pay the principal of the nonmaturing bonds on April 10, 1926, under R. S. art. 2787a. This permission was granted. April 10, 1926, the First State Bank of Paris (later herein called the Paris bank), which was county depository of Lamar county school fund, drew a draft on the Republic National Bank of Dallas (later herein called the Dallas bank), in favor of the state treasurer for $19,948; and delivered it to the county auditor, who mailed it to the state treasurer. Funds to meet the draft were deposited in the Dallas bank in the following manner: The county auditor presented warrants to the county treasurer (who was also cashier of the Paris bank), aggregating $19,948; and the county treasurer drew a check upon the Dallas bank, where the Lamar county school fund was (without the knowledge of the county commissioners) deposited, and had the amount of the check transferred on the books of the Dallas bank from the account of the school fund to that of the Paris bank. The latter closed its doors on May 26, 1926, up to which time the state treasurer had taken no steps to collect the draft; and the amount thereof was thereby lost to the school districts.

The cashier's check was issued May 8, 1926, by the Paris bank in favor of the state treasurer for $903.75 to cover bonds and interest due on that date, and owned by the permanent school fund. It was handled in the same manner as the draft and met a like fate.

Appellees contend that it was no part of the official duties of the state treasurer in collecting sums due the state, or any fund in his official custody, to accept anything but money; and that, therefore, he could act only in an individual capacity as the agent of the sender in handling remittances by check or draft. This is the general rule in the absence of governing statute. Figures v. State (Tex. Civ. App.) 99 S. W. 412; 37 Cyc. p. 1162b.

Appellant relies upon that portion of R. S. art. 2535, reading: "All remittances to the Treasurer made by the State or reserve depositories, or any person or persons may be

in cash * * * by post office money order, express money order of any company authorized to do business in Texas, or by any bank draft on any bank in the following cities; Dallas, Fort Worth, Waco, Houston, Austin, Galveston and San Antonio. The liability of any reserve depository, State depository or person sending the same shall not cease until the said money is actually received by the Treasurer."

The cashier's check was drawn upon the Paris bank, and was therefore not included in the specified forms of remittances authorized by the act. Manifestly the right to remit in this form was not given by the statute, and therefore no duty could be imposed upon the treasurer to accept and handle the check. As to this item we sustain appellees' contention and the judgment of the trial court.

Since the draft was by a bank upon a Dallas bank, and therefore came within the express terms of the statute, we overrule appellees' contention and the court's judgment as to it.

It is quite true that the statute was passed for the convenience of the remitter. We think, however, it was also for the convenience of the state in collecting and handling its funds. But whether the latter or not, we are clear in the view that the statute imposed the duty upon the treasurer to accept for collection items in the form the statute authorized, and for any dereliction in that regard he would be liable as for failure to perform an official duty. The fact that the remittance does not constitute payment, and that the remitter remains liable until the draft is paid, does not militate against this conclusion. The duties of a public official are not confined to those he owes to the state or a municipality; and where a statute gives to individuals the right to deal with the officials in a particular manner touching their official duties, corresponding official duties are raised in favor of the individuals to have the business properly transacted by the officials in accordance with the prescribed method. Since the statute authorized remittance in this form, the remitter had the right to require its acceptance and proper handling. Such requirement, relating as it did to the treasurer, must necessarily so relate in his official capacity. Any other construction would render the statute nugatory, as compliance would be at the option or caprice of the treasurer, of which there is no intimation in the statute.

Appellees make the following further contention regarding the quoted provision of article 2535: "We think it plain, from its position in the statutes as a part of the State depository law, that it has reference only to remittances by or in behalf of State depositories to the State Treasurer. Otherwise, as contended by appellants, any individual, owing money to the State, could draw a check in favor of the Treasurer on any bank in any of the cities named in the article, and send same to the Treasurer, and thereby place upon him the obligation and burden of promptly attempting to collect same, as if it were a commercial transaction between private individuals, under the pains and penalties of having to pay the amount thereof himself."

We find nothing in the language or context authorizing a construction which would limit the provisions to "remittances by or on behalf of State depositories to the State Treasurer."

The depository law was originally passed in 1905 (chapter 164, Gen. Laws, 29th Leg., p. 387). Section 12 of the act reads: "Any person whose duty it is to pay over to the State of Texas *any money belonging thereto or to any funds of said State* may pay the same to the State Treasurer or he may remit or deposit the same in any State depository, which is then authorized to act as a State depository under this Act, but in case the party is a non-resident of the State of Texas, said money so due or to become due, shall be remitted direct to the State Treasurer at Austin. In any event *said money or any money due the State, or any of its funds* may be sent by registered letter in due course of mail, by postoffice money order, express money order of any company authorized to do business in Texas, or by personal check, or bank draft on any incorporated State or national bank authorized to do business in Texas; but in such cases the liability of the person sending the same shall not cease until said money is actually received by the State Treasurer or State depository, in due course of business." (Italics ours.)

The first sentence of this section, by strict construction, might be held to apply only to persons holding money belonging to the state, or to any of its funds, and thereby to exclude money due or owing but not actually belonging to the state or to some state fund. The second sentence, however, which provides for the form of remittances, authorizes not only "said money," but expressly adds "any money *due* the State, or any of its funds." It will be noted that a much wider latitude is given in the form of remittances than in the present article, in that personal checks and bank drafts on any incorporated state or national bank authorized to do business in Texas are included.

The acts of 1907 (chapter 90, p. 183, Gen. Laws 30th Leg.) and 1911 (chapter 3, p. 2, Gen. Laws 32d Leg.) made no change in this section, and it was carried forward in the same language in the 1911 codification as article 2431.

The act of 1919 (chapter 145, Gen. Laws

36th Leg.) carried the pertinent portions of article 2431 into article 2429. It authorized the state depository board to designate depositories and reserve depositories, and permitted "such officers and other persons, who come into possession of funds belonging to the State to deposit such funds" in the depositories. The remittance clause was restricted to "such funds" and the medium to cash, etc., "or by bank draft on any State or National bank authorized to do business in Texas."

A literal construction would limit this amendment to funds belonging to the state and held in trust.

The act of 1923 (chapter 34, p. 60, Gen. Laws 38th Leg.) amended article 2429, and as amended was carried forward without change into the 1925 codification, as quoted first above.

It will therefore be seen that the original act by its terms applied to any money due, as well as to any funds belonging to the state. The act of 1919 restricted the scope of the remittance clause to state funds; and the act of 1923 again broadened the clause so as to embrace "all remittances to the Treasurer." The language employed is ample to include, and we think was intended to include, all remittances by any one to the state treasurer of money which the treasurer was required in his official capacity to receive, whether such money belonged to or was due the state or any of its funds.

Under the original act any individual owing money to the state, or to any of its funds, could remit "by personal check, or bank draft on any incorporated State or national bank authorized to do business in Texas"; and thereby place upon the treasurer the burden of promptly attempting its collection. While the punctuation (comma after check) would ordinarily restrict the clause "on any incorporated," etc., to bank draft, it is clear that the Legislature did not so intend. Such construction would authorize any personal check drawn on any banking institution anywhere. The clause manifestly modifies "check" as well as "bank draft." Ordinarily "bank draft" would include any draft drawn on a bank; but if given that meaning in the act the word "bank" would be entirely superfluous, since there was express provision that the draft be drawn on some bank. We think "bank draft" was used to denote a banker's or bank's draft as distinguished from a personal check. In the 1919 and 1923 acts and the 1925 codification, the same language, omitting personal checks, was brought forward, and should, we think, be given the same construction. Thus it will be seen, from the history of the legislation, that originally any one could remit money belonging to or due the state or any

of its funds by personal check on any incorporated state or national bank in Texas; that by the 1919 act the remittances covered only "such funds" as were "belonging to the State," and the only form of checks authorized was "bank drafts" drawn on Texas banks; and that the 1923 act and 1925 codification broadened the character of funds to include "all remittances to the Treasurer made by * * * any person or persons," but restricted the checks authorized to "bank drafts" drawn upon banks in the designated cities. Personal checks were eliminated in the 1919 and all subsequent enactments, and the "bank drafts" authorized were further restricted in 1923 to those drawn on banks in the larger centers within a radius of approximately 200 miles of the state capital. The other authorized forms of remittances could be converted into money in Austin. These restrictions in the forms of remittances were no doubt for the convenience of the treasurer, and clearly, we think, no duty was imposed upon him to accept remittances in any other form. On the other hand, there is no reasonable basis for distinguishing between money belonging to and that due the state, or any of its funds, especially when the form of remittance is restricted to "bank drafts" on banks in the designated cities; and since the language of article 2535 is broad enough to include both, we think it should be given that construction.

By special exception (which the court sustained), appellees urged the two-year statute of limitations. Appellant contends that since the suit was upon the official bond (a contract in writing), the four-year statute (article 5527) applies.

It is not contended that if article 5527 does not apply the four-year period applies under article 5529; nor is this subject briefed by either party.

Whether a suit against a public officer for breach of an official duty is an action upon the bond, or whether, on the other hand, the bond is merely security for and incidental to the official obligation, has not, so far as we have been able to discover, been adjudicated by our Supreme Court. The Courts of Civil Appeals are in conflict upon the question.

The great weight of authority in other states is to the effect that the action is not on the bond, which is only collateral security for the faithful performance of official duty. Sonoma County v. Hall, 132 Cal. 589, 62 P. 257, 312, 65 P. 12, 459; Calaveras County v. Poe, 167 Cal. 519, 140 P. 23; Norton v. Title Guaranty & Surety Co., 176 Cal. 212, 168 P. 16; Ryus v. Gruble, 31 Kan. 767, 3 P. 518; Graham County v. Van Slyck, 52 Kan. 622, 35 P. 299; Gallatin County v. U. S. Fid. Co., 50 Mont. 55, 144 P. 1085; Butte v. Goodwin, 47 Mont. 155, 134 P. 670, Ann. Cas. 1914C, 1013; State v. Conway, 18 Ohio, 235; State v.

Blake, 2 Ohio St. 147; Contra Kenton County v. Lowe, 91 Ky. 367, 16 S. W. 82. We have not attempted any exhaustive research in other jurisdictions upon the subject.

The question appears first to have reached the Court of Civil Appeals in Lane v. Delta County, 109 S. W. 866, 867, decided by the Dallas court (Judge Talbot writing), in 1908. There is no citation of authority, and the question is disposed of in the following quotation: "The suit was upon the official bond of the appellant Lane, and the statute of limitations of four years was applicable."

In 1909, in a well-considered opinion by Judge Neill, of the San Antonio court (Phillips v. Hail (Tex. Civ. App.) 118 S. W. 190, 191), in which a number of decisions from other states were cited, but no reference was made to the Lane Case, it was held that the two-year statute applied. The court say: "This is founded on the principle that an official bond is simply a collateral security for performing the officer's duty, and, when suit is barred for breach of his duty, action is also barred on the bond."

Later in 1909 the Texarkana court (Willson, C. J., writing), in Hillman v. Gallagher (Tex. Civ. App.) 120 S. W. 505, after discussing both the Lane and Phillips Cases, followed the latter. This case, however, arose upon a liquor dealer's bond, and the decision of the Texarkana court was reversed (103 Tex. 427, 128 S. W. 899, 900, opinion by Chief Justice Gaines), upon the holding that:

"Our statute provides that 'there shall be commenced and prosecuted within four years after the cause of action shall have accrued, and not afterward, all actions or suits in court of the following description:

" '(1) Actions for debt where the indebtedness is evidenced by or founded upon any contract in writing.' Rev. St. 1895, art. 3356 [present article 5527].

"The cause of action in this case is both 'evidenced by and founded upon a contract in writing,' to wit, the statutory bond. The bond states the conditions upon which the recovery may be had and promises to pay, in accordance with such conditions. Without the bond there can be no recovery."

No reference is made to the holdings in either the Lane or Phillips Cases, and it may be cogently urged that the decision was intended to be limited to liquor dealers' bonds, which differed from official bonds in that the former furnished the only basis for recovery, whereas recovery might be had against the official independently of his bond. The Supreme Court pointed out that the action there was "founded upon" as well as "evidenced by" a contract in writing—the liquor dealer's bond. An action against a public official for breach of official duty is not "founded upon" his bond; but is it not "evidenced by" his bond? In so far as the treasurer is concerned

the bond which bears his signature states that he "as principal" is "held and firmly bound unto Pat M. Neff, Governor of the State of Texas, and his successors in office, for the use of the State of Texas, in the sum of" $75,000 for the payment of which he binds himself, his "heirs, executors, and administrators * * * by these presents." It is conditioned to be void if he "shall faithfully execute the duties of his office as State Treasurer * * *, otherwise to remain in full force and virtue." It may be urged, we think, with much force that this is a contract in writing whereby the treasurer agrees to perform the duties of his office. True, he is already obligated to perform those duties, but none the less may it not be said that the bond affords evidence over the signature of the treasurer of a promise or contract to perform those duties? The statute, in the use of "evidenced by" as well as "founded upon" in the disjunctive, was manifestly intended to cover every action founded upon an obligation which the party bound had contracted in writing to perform, whether the writing be the foundation of the obligation or merely "evidenced," that is, acknowledged and promised to perform it.

In 1917 the El Paso court in Jeff Davis County v. Davis (Tex. Civ. App.) 192 S. W. 291, 297 (Judge Higgins writing), held the action there in part to be upon the official bond, "and under the decision in Hillman v. Gallagher, 103 Tex. 427, 128 S. W. 899, the four-year statute would apply." The opinion points out, however, that the question was immaterial under other rulings of the trial court. Writ of error was refused in that case by the committee of judges, but the application was by the county only, in whose favor this particular question was decided, and it was not presented in the application.

Later (1924) the El Paso court, in Wade v. Monroe (Tex. Civ. App.) 266 S. W. 560, 561 (Chief Justice Harper writing), held that the four-year and not the two-year statute applied to an action against a sheriff "for which he was liable under his bond." The question was controlling in the decision.

Earlier in the same year the Waco court, in McKenzie v. Hill County (Tex. Civ. App.) 263 S. W. 1073, 1074 (Judge Barcus writing), held with reference to a suit against tax collector and his bondsmen: "We see no reason why under the facts in this case the four-year statute of limitation should not be applied against the appellee as to fees collected by appellant McKenzie." Writ of error was denied, but this holding was not brought in question; the application being only by the county as in the Davis Case.

We attach no importance to the quotation with apparent approval from the brief citing the Phillips Case and the Texarkana court's holding in the Hillman Case embodied in the opinion by Judge Higgins of the El Paso court

in Moran v. Midland Farms Co. (Tex. Civ. App.) 282 S. W. 612. The point there decided was that an action to foreclose a deed of trust lien is barred when the debt it secures is barred—a well-recognized general principle. See State v. Glenn, 118 Tex. 334, 13 S.W. (2d) 337, 15 S.W.(2d) 1028, and authorities there cited.

In Bitter v. Bexar County, 11 S.W.(2d) 163, 167 (Judge Nickels writing for Section A of the Commission of Appeals), it is said: "Since the county's suit, inter alia, is predicated upon Bitter's official bond, we regard the bar of the four-years' statute as being the one to be considered."

It does not appear from the opinion of the Commission or from that of the Court of Civil Appeals (266 S. W. 224) that the question whether the two or four year statutes applied was raised. We have examined the record, briefs, rehearing motions, petitions for writ of error, and arguments filed in the case. In the trial court Bitter pleaded both the two and four year statutes, and the trial court applied the latter. Each side appealed and sued out writ of error to the Supreme Court. Bitter did not assign error upon the refusal of the trial court to apply the two-year statute; and the county's assignments regarding limitation were to the effect (1) that no limitation would apply because the suit was by the county in its governmental capacity, and (2) that concealment of certain facts by Bitter tolled the statute until the concealment was brought to light. There is no allusion of any character to the question whether the two or four year statute applies in any assignment of error, brief, petition for writ of error, motion for rehearing, or argument filed by either party in the case, so far as we have been able to discover.

Regardless of what our views upon the subject might be were it presented as a question of first impression, we are constrained to follow the holdings by the Dallas, El Paso, and Waco courts.

■ Statutes of limitations create vested rights; and where construed by an appellate court (although not of last resort), legislative acquiescence therein may be presumed from protracted failure to amend them. The El Paso court's holding in the Davis Case, though not necessary to the decision, placed a construction upon the Hillman Case which, to say the least, is plausible; and the holding is therefore persuasive. The only other holdings upon the question subsequent to the Hillman decision are those of the El Paso and Waco courts which are to the same effect as the Davis Case. Reliance upon these holdings is what one would reasonably expect, and it would work a hardship, after such reliance, to apply a shorter period of limitation and thus cut off all right of recovery. If the holdings are not in accord with the legislative intent, the situation may readily be remedied as to future transactions by amendment clarifying the statutes.

■ The next contention of appellees (which the court sustained) is to the effect that the treasurer is not liable for dereliction of his appointees in the absence of a showing that he did not exercise due precaution in their appointment. This, in any event, would probably be a matter of defense, as the petition charged only the treasurer with the dereliction. However, we will consider the question upon the assumption that the treasurer did not personally handle the matter. Appellees rely upon Clough v. Worsham, 32 Tex. Civ. App. 187, 74 S. W. 350 (error denied); Robertson v. Sichel, 127 U. S. 507, 8 S. Ct. 1286, 32 L. Ed. 203; and Alabama v. Kolb, 201 Ala. 439, 78 So. 817, 1 A. L. R. 218.

The Clough Case is manifestly not in point.

While there is much conflict of holding in other jurisdictions concerning the liability of public officers for the acts and omissions of their deputies, clerks, and assistants, the question at bar is foreclosed in this state, we think, by the holding in Brown v. Sneed, 77 Tex. 471, 14 S. W. 248, to the effect that the official and his bondsmen are liable for any breach of duty imposed by statute upon the official, regardless of whether the breach were occasioned by the official personally. There the comptroller and his chief clerk were both held liable to the state, although the latter was required by statute to give bond payable to the state. It is to be observed that the same requirement is made regarding the treasurer's chief clerk; and all employees of the treasurer "who, as a part of their duties, handle any money, *drafts*, *checks*, *bills of exchange*, warrants, or securities or other evidences of debt which are, or may be, convertible into money," are required to give bond payable to the treasurer "in such sum as he may require, conditioned that he or she will faithfully execute and perform the duties of his or her position." R. S. art. 4375. The treasurer is thus given ample means of protecting himself against any liability which might arise from the dereliction of any employee touching the specific matter here in suit. Clearly we think the liability is that of the treasurer regardless of whether he had any personal part in the dereliction.

■ Special exceptions to the petition were sustained supporting appellee's contention that the loss was not due to the dereliction of the treasurer in failing to collect the draft, but to "a violation by the county treasurer of Lamar County of his official duties, by withdrawing from the county depository the funds of the school districts in question and depositing them in the Republic National Bank of Dallas to the credit of the First State Bank of Paris." The draft employed was, as we have noted, in literal compliance with the statute, and we can, therefore, see no violation

of duty on the part of the county treasurer in that regard. There may have been a violation of duty in depositing the school funds in the Dallas bank, instead of in the Paris bank (a matter wholly irrelevant to any issue in the case), but there was no irregularity in placing funds in the Dallas bank to meet payment of the draft. Aside from all this, however, the manner of handling the fund had nothing to do with the loss, unless it could be said to be the duty of the county treasurer to make a special instead of a general deposit to meet the draft. But even so, the draft would have been paid and there would have been no loss had it been presented at the Dallas bank prior to May 26th. If its failure to be so presented was due to dereliction of duty on the part of the treasurer, for which he would be liable, that, and not the county treasurer's method of handling the fund, was the direct, immediate, and therefore the proximate cause of the loss. Coleman v. Lytle, 49 Tex. Civ. App. 42, 107 S. W. 562, and National Surety Co. v. State Sav. Bank (C. C. A.) 156 F. 21, 14 L. R. A. (N. S.) 155, 13 Ann. Cas. 421, are clearly not in point.

■■■ This holding also disposes of the remaining exceptions to the petition which the trial court sustained, to the effect that the petition was defective in failing to show that the amount of the loss could not be collected from the depository (Paris bank), or its sureties, or from the county treasurer and his sureties. In so far as the Paris bank is concerned, its liability on the draft drawn by it was continuing; and the treasurer would be subrogated to the rights of the school districts to receive whatever dividends might be declared in the latter's favor to the extent of the amount of their deposits represented by the draft. As between the treasurer, on the one hand, and the Paris bank's sureties and the county treasurer and his sureties on the other, the primary liability was on the state treasurer, and he could not defend in a suit for the benefit of the school districts on the ground that the others named were also liable.

The other assignments relate to the action of the trial court in refusing to sustain exceptions to the defendants' answers. In view of another trial, we will consider these assignments. Technically we might not be required to do so, but neither side has raised the point, and both have briefed the questions and request our ruling thereon.

■■■ In some detail the answers show that the volume of remittances coming to the treasurer at the time in question was so great that, with the limited assistance furnished by the Legislature, it was impossible to reach the draft in the regular order of its receipt until after May 26th. Appellant's contention is that this was not a legal excuse for failure to put the draft in due course of collection in accordance with banking customs. We overrule this contention. The treasurer could only employ such facilities as the state afforded in transacting the business of his office, and he should be held negligent only to the extent that he failed to make proper and efficient use of those facilities. The impossible should not be required of him, nor should he be required to resort to his private means in furnishing employees to transact the state's business. To this extent, at least, the customs relating to banking or commercial transactions do not apply to him.

■■■ Appellant contends throughout its brief that the liability of the treasurer is that of a public officer "charged with the safe keeping and handling of public moneys." In this we cannot agree. Neither the draft nor the certified check constituted money or funds the official custody of which was reposed in the state treasurer. As to the certified check, as already noted, there was no official obligation on him to receive it, and therefore no official liability regarding it could be imposed upon him. We think it clear that appellant districts could not impose a liability upon the treasurer and his bondsmen, by remitting to the former through a medium of payment which the law conferred upon him no authority to accept. The draft could not constitute payment of the bonds until collected and the proceeds received by the treasurer. Until then the ownership was in the districts. We may concede an interest, or perhaps qualified ownership, in the permanent school fund arising from the fact that the treasurer was bound to accept the draft, and with due diligence put it in course of collection. His unauthorized refusal to do so could, we think, be compelled by mandamus. In that event any loss of interest by reason of the incidental delay would constitute an official liability upon the treasurer's part. Whether this liability would be in favor of the permanent school fund is immaterial to any issue in this case. The draft could in no event become a part of that fund until collected, and the liability of the treasurer, whether to the fund or to the school districts, would depend upon his negligence, vel non, or upon the validity of his action, in case of refusal to accept the draft.

■■■ The answers further alleged that the board of education in permitting bonds belonging to the permanent school fund to be paid before maturity required a bonus of sixty days' interest on the amount of the bonds to be so retired; and the draft did not include this bonus. The exception to this defense was that such bonus was illegal under the proviso to R. S. art. 2787a, reading: "It shall be unlawful for any person upon whom any duty rests in carrying out the provisions of this law to give or receive any commission, premium, or any compensation whatever *for the performance of such duty or duties.*" (Italics ours.)

This language we think is plainly applicable only to commissions, premiums, or other com-

pensation in consideration for the performance of duties incident to carrying out the provisions of the article. We are unable to construe it as inhibiting the requirement of a bonus to be paid to the permanent school fund for a privilege which the board of education was given the discretion to allow or deny. Such discretion, we think, should admit of reasonable conditions imposed by the board of education as a means of preventing loss to the permanent school fund by reason of delay in reinvesting its funds. A bonus of sixty days' interest certainly could not be held unreasonable.

Additionally we agree with appellees' contention that "the Board of Education and not the Treasurer, is vested with the authority and duty to make contracts for paying bonds before their maturity, and when such contract has been made, the Treasurer must observe its terms in receiving payment for, and delivering over the bonds so paid." We do not think the treasurer was at liberty to accept payment on unmatured bonds under conditions other than those imposed by the board. In this regard he was merely a ministerial officer charged with the duty of carrying out the orders of the board. We quote further with approval from appellees' brief: "If appellees (appellant school districts) were not willing to abide by the terms prescribed by the Board of Education, and elected to send the remittances in amounts less than necessary under such terms, for the payment of the bonds, they should have taken appropriate steps to force the acceptance of such lesser amounts by the Board of Education, rather than demand and expect the Treasurer to join them in such disregard of the action of the Board."

We have not considered the assignments of error severally, but the above holdings cover all the rulings of the trial court that are brought in question, and will be a sufficient guide upon another trial.

The trial court's judgment is affirmed as to the certified check; in all other respects it is reversed and the cause remanded.

Affirmed in part, and in part reversed and remanded.