

# THE ATTORNEY GENERAL
# OF TEXAS

JIM MATTOX
ATTORNEY GENERAL

September 1, 1989

Mr. J. E. Birdwell, Jr.
Chairman
Texas Agricultural
  Finance Authority
P. O. Box 12847
Austin, Texas 78711

Opinion No. JM-1092

Re:    Liability of members of
the board of directors of the
Texas Agricultural    Finance
Authority  (RQ-1637)

Dear Mr. Birdwell:

You inquire about the personal liability of board members of the Texas Agricultural Finance Authority, a public authority within the Department of Agriculture established by the Texas Agricultural Finance Act. Agric. Code §§ 58.001-58.039; see Tex. Const. art. III, § 52-a (legislature may provide for creation of programs to foster growth of agricultural enterprises). The purposes of the authority are stated in section 58.021 of the Agriculture Code:

> (a)  In order to promote the expansion, development, and diversification of production, processing, marketing, and export of Texas agricultural products, the authority shall design and implement programs to provide financial assistance to eligible agricultural businesses, including programs:
>
> > (1)  to make or acquire loans to eligible agricultural businesses;
> >
> > (2)  to make or acquire loans to lenders to enable those lenders to make loans to eligible agricultural businesses;
> >
> > (3)  to insure, coinsure, and reinsure, in whole or in part, loans to eligible agricultural businesses;
> >
> > (4)  to guarantee, in whole or in part, loans to eligible agricultural businesses; and

>           (5) to administer or participate in
>      programs established by another person to
>      provide financial assistance to eligible
>      agricultural businesses.

The board may issue revenue bonds to provide funds to carry out any of these purposes. Agric. Code § 58.033.

Since the board of directors of the Agricultural Finance Authority will be responsible for handling a substantial amount of money, questions have arisen about board members' exposure to liability. Your first question is as follows:

>           May the Board be found personally liable
>      for causes of actions arising out of the
>      performance of board duties?

We assume that you are concerned about personal liability for negligence in handling funds, not liability for intentional violations of the civil or criminal law, or actions taken in bad faith. See Brown v. Sneed, 14 S.W. 248 (Tex. 1890) (comptroller's chief clerk liable to the state for funds he embezzled); Borger Indep. School Dist. v. Dickson, 52 S.W.2d 505 (Tex. Civ. App. - Amarillo 1932, writ ref'd) (school trustees personally liable for unauthorized action taken for corrupt motives); Grimm v. Arizona Bd. of Pardons and Paroles, 564 P.2d 1227 (Ariz. 1977) (members of parole board may be personally liable for reckless decision in releasing prisoner).

Section 58.016(e) of the code provides as follows:

>           The board members, administrator, and
>      staff of the authority may not be personally
>      liable for bonds issued or contracts executed
>      by the authority and shall be exculpated and
>      fully indemnified in the documents relating
>      to any bonds except in the case of fraudulent
>      or wilful misconduct on the part of the
>      individual seeking exculpation or indemni-
>      fication.

This exculpatory provision protects board members from liability to members of the public for bonds issued or contracts executed, with the exceptions stated. They are also protected by the doctrine of official immunity recognized by the Texas courts. See Attorney General Opinion JM-404 (1985). A public officer is not ordinarily liable for mistaken judgment in performing discretionary acts within the course and scope of his public duties. See

generally Campbell v. Jones, 264 S.W.2d 425 (Tex. 1954); Rains v. Simpson, 50 Tex. 495 (1878); Torres v. Owens, 380 S.W.2d 30 (Tex. Civ. App. - Corpus Christi 1964, writ ref'd n.r.e.). He will be liable for mistaken judgment or unauthorized acts if he acts willfully or maliciously. Campbell v. Jones, supra; Stein v. Highland Park Indep. School Dist., 540 S.W.2d 551 (Tex. Civ. App. - Texarkana 1976), aff'd, 574 S.W.2d 807 (Tex. Civ. App. - Texarkana 1978, writ dism'd). The doctrine of official immunity does not bar a suit to enjoin a public official's unauthorized act, nor does it apply to ministerial functions. See Texas Highway Comm'n v. Texas Ass'n of Steel Importers, 372 S.W.2d 525 (Tex. 1963); Rains v. Simpson, supra; Attorney General Opinion JM-404.

Federal courts, however, use a different test of official immunity. See Attorney General Opinion JM-404. Administrative officers who perform discretionary functions have only a qualified immunity from suit for personal liability. Harlow v. Fitzgerald, 457 U.S. 800 (1982); see generally Civ. Prac. & Rem. Code ch. 104 (state liability for conduct of public servants).

Public officers are moreover accountable to the state for public funds in their custody. See Brown v. Sneed, supra; Attorney General Opinions JM-153 (1984); O-6376 (1945); 42 Tex. Jur.3d Government Tort Liability § 60, at 117. Cf. Tex. Const. art. III, § 20 (discharge); id. art. IV, §§ 24, 25 (custodians of funds); Gov't Code §§ 41.009 (action by district or county attorney to compel local officer to perform duty to collect or safeguard public funds), 402.026 (action by attorney general to recover state funds). A board member's liability to the state for state funds is not affected by section 58.016(e) of the code.

Your second question is as follows:

> May the Board increase its protection from liability and at the same time limit its exposure from liability, in either an official or individual capacity, by increasing the amount of its surety bond coverage from $25,000 to $100,000? or by obtaining additional insurance coverage?

In answer to your first question we found that both the statute and the common law accord board members considerable immunity from liability to members of the public. We assume that the board is interested in increasing its protection from liability only in the areas where it is not immune, that is, its liability to the public, if any, which is not

covered by the immunity provisions, and its accountability to the state for public funds.

The State Employee Bonding Act, which prescribes uniform standards for the bonding of state officers and employees, includes the following definition:

> 'Bond' means any agreement under which an insurance company becomes obligated as surety to pay, within certain limits, loss caused by the dishonest acts of officers and employees, or to pay for loss caused by failure of officers or employees to faithfully perform the duties of the offices or positions held.

V.T.C.S. art. 6003b, § 3(a).

Each director of the Texas Agricultural Finance Authority is required to execute a surety bond in the amount of $25,000 conditioned on faithful performance of the duties of director. Agric. Code § 58.012(d). The cost of the $25,000 bond is paid by the authority. Id. This provision sets a limit on the expenditure the authority may make to purchase surety bonds for its members. See Tex. Const. art. III, § 44; Attorney General Opinion H-533 (1975). Accordingly, the board is not authorized to pay more in surety bond premiums for its members than the premium for a $25,000 bond.

You have not asked us to consider a specific kind of insurance coverage. In addressing your question we will use errors and omissions coverage as an illustration. Our answer does not apply to a particular insurance contract, and the board's power to enter into any such contract will depend in part on whether its statute permits it to accept the specific contract provisions.

Errors and omissions coverage is a form of malpractice insurance designed to protect an insured from the consequences of his negligent acts, errors, and omissions. It does not ordinarily cover dishonesty, intentional fraud, or criminal or malicious acts. See St. Paul Ins. v. Bonded Realty, 578 S.W.2d 191 (Tex. Civ. App. - El Paso), writ ref'd n.r.e. per curiam, 583 S.W.2d 619 (Tex. 1979); Attorney General Opinion H-1042 (1977); 13A G. Couch, Cyclopedia of Insurance Law, § 48:166, at 166 (2d rev. ed. 1982). We assume, for purposes of this opinion, that an errors and omissions policy could be written to cover the board's liability to the state as well as to members of the public.

You direct our attention to section 58.022(7) of the Agriculture Code as a possible source of authority to purchase insurance for board members.

> <u>The authority has all powers necessary to accomplish the purposes and programs of the authority, including the power</u>:
>
> . . . .
>
> (7) to procure insurance and pay premiums on insurance of any type, in amounts, and from insurers <u>as the board considers necessary and advisable</u> to accomplish any of its purposes. (Emphasis added.)

To accomplish its purposes and implement its programs, the authority must handle state funds allocated to it for those purposes. We believe it may take reasonable steps to protect the interest of the public and the state in these funds, including the purchase of insurance to protect against loss of the funds through the board's own negligence. Board members are personally liable for their own negligence in handling funds and would remain liable whether or not they are covered by errors and omissions insurance. Nonetheless, the state's and the public's interest in the funds held by the board might be much better protected by an insurance policy than by a suit for negligence against board members who may not have sufficient funds to pay the judgment.

Several prior opinions of this office have stated categorically that errors and omissions coverage for public officers and employees would benefit only those persons and not the governmental entity that they serve. <u>See, e.g.</u>, Attorney General Opinions MW-276 (1980); M-441 (1969); C-607 (1966); C-506 (1965). The opinions go on to conclude that an expenditure of public funds to provide errors and omissions coverage for a public officer would be a grant of public funds in violation of article III, sections 51 and 52, of the Texas Constitution unless the premiums are paid as a form of compensation. <u>See</u> Attorney General Opinions MW-276, MW-156 (1980); H-1042 (1977). These opinions do not consider whether the governmental entity as well as the individual officer might have an interest in insuring against a loss of public funds through the officer's

negligence.[1]  Nor are these opinions consistent with more recent statements of the law by the courts and this office, as an examination of their reasoning will show.

Attorney General Opinion C-506 (1965) found unconstitutional a statute requiring a county to pay premiums on an errors and omissions insurance policy for the county clerk. The opinion based its conclusion on the rule "that a county is not liable for the tortious or negligent acts of its officers, agents or employees."  Attorney General Opinion C-506, at 2.   It then reasoned that payment of a damages claim arising out of the county clerk's performance of his official duties would constitute a gift or grant in violation of article III, sections 51 and 52, of the Texas Constitution, concluding that "it would likewise be a violation of the same constitutional provisions for a county to pay the premiums on an insurance policy which had as its purpose the paying of a claim predicated on facts which generated no county liability."  Id. at 3.

Subsequent authorities have modified the rule on which Attorney General Opinion C-506 based its conclusion.  Letter Advisory No. 24 (1973) held constitutional a statute that would provide for the defense of county officials and employees by district or county attorneys, or by county-paid private counsel, in certain lawsuits.  See Local Gov't Code § 157.061 (formerly codified as V.T.C.S. art. 332c).   The opinion stated that "there is no constitutional prohibition against the use of public funds to defend a county's interest in a legal contest, even if the county is not named as a party to the suit."  Letter Advisory No. 24, at 2.   The county attorney could represent a county official or employee if the county's interests are at stake and he believes in good faith that the officer or employee has acted within the proper scope of his authority in the performance of public duties.   Id. at 3; see also Attorney General Opinions JM-755 (1987); H-887 (1976); H-544 (1975); see generally City of Corsicana v. Babb, 290 S.W. 736 (Tex. Comm'n App. 1927, judgm't adopted) (city may employ

_____

1. Attorney General Opinion MW-276 (1980), in concluding that a purchase of errors and omissions coverage for trustees of state retirement systems would benefit only the trustees, stated that the systems were already protected by performance bonds required of the trustees and paid for with public funds.  This observation suggests that errors and omissions insurance could be provided at public expense if necessary to protect retirement funds.

attorney to defend policemen indicted for killing a person while attempting to arrest him); Chandler v. Saenz, 315 S.W.2d 87 (Tex. Civ. App. - San Antonio 1958, writ ref'd n.r.e.) (city council may use public funds to defend suit contesting two year terms for city officers).

Moreover, the legislature has adopted the Tort Claims Act, authorizing the use of public funds to reimburse individuals injured by the negligence of governmental employees and waiving its immunity from suit and from liability to the extent set out in that statute. Civ. Prac. & Rem. Code ch. 101; see id. §§ 101.021, 101.025. In Harris County v. Dowlearn, 489 S.W.2d 140 (Tex. Civ. App. - Houston [14th Dist.] 1972, writ ref'd n.r.e.), the court concluded that the Tort Claims Act did not authorize a grant of public funds to individuals in violation of article III, sections 51 and 52, of the Texas Constitution. See also Civ. Prac. & Rem. Code ch. 104.

Since Attorney General Opinion C-506 was issued, the legislature, the courts, and the opinions of this office have recognized that a governmental entity may have an interest in representing public servants in suits arising from their negligence in performing public duties. In. a proper case, the expenditure of public funds to pay for the individual's legal representation and damages does not violate the constitution. We overrule the statements in Attorney General Opinion C-506 and its progeny that the purchase of errors and omissions insurance coverage for a public officer or employee violates the constitution unless it is part of compensation.

Article III, sections 51 and 52, of the Texas Constitution do not prohibit the authority from buying errors and omissions insurance to protect the state, or members of the public in cases outside of the immunity provisions, from loss of its funds through the negligence of board members. If the board determines in good faith that purchase of such insurance is necessary and advisable to carry out its purposes, it may spend public funds for the premiums. Attorney General Opinions MW-276, MW-156, H-1042, M-441, C-607 and C-506 are overruled in accordance with this opinion.

Your third question is as follows:

> Are Board members state employees for purposes of Chapter 104. State Liability for Conduct of Public Servants, of the Civil Practice and Remedies Code?

Section 104.001 of the Civil Practices and Remedies Code provides in part:

In a cause of action based on conduct described in Section 104.002, the state shall indemnify the following persons for actual damages, court costs, and attorney's fees adjudged against:

(1) an employee, a member of the governing board, or any other officer of a state agency, institution, or department.

Section 104.002 provides as follows:

The state is liable for indemnification under this chapter only if the damages are based on an act or omission by the person in the course and scope of the person's office, employment, or contractual performance for or service on behalf of the agency, institution, or department and if:

(1) the damages arise out of a cause of action for negligence, except a wilful or wrongful act or an act of gross negligence; or

(2) the damages arise out of a cause of action for deprivation of a right, privilege, or immunity secured by the constitution or laws of this state or the United States, except when the court in its judgement or the jury in its verdict finds that the person acted in bad faith, with conscious indifference or reckless disregard; or

(3) indemnification is in the interest of the state as determined by the attorney general or his designee.

See also Civ. Prac. & Rem. Code § 104.003 (limits on state liability for indemnification).

Members of the board of directors of the Texas Agricultural Finance Authority are covered by chapter 104 of the Civil Practices and Remedies Code. Although a board member is probably not an employee within section 104.001(1), he is "a member of the governing board, or any other officer of a state agency, institution, or department . . . ." See,

e.g., Agric. Code §§ 58.012(a) (membership of board), 58.021 (purposes of board), 58.022 (powers of the board). Directors of the authority are therefore covered by chapter 104 of the Civil Practices and Remedies Code.

## S U M M A R Y

Members of the board of the Texas Agricultural Finance Authority may be found personally liable for causes of action in favor of the state arising out of the performance of board duties, but board members, acting within the scope of their office, will not be held personally liable to members of the public for errors or omissions in the issuance of bonds or the execution of contracts which do not constitute fraudulent or willful conduct.

The Authority may use public funds to purchase for its directors insurance to protect the state's or the public's interest in the funds it handles.

Members of the board of directors of the Texas Agricultural Finance Authority are covered by chapter 104 of the Civil Practice and Remedies Code which indemnifies employees, members of a governing board, and other officers of a state agency, institution, or department in certain causes of action.

Very truly yours,

JIM MATTOX
Attorney General of Texas

MARY KELLER
First Assistant Attorney General

LOU MCCREARY
Executive Assistant Attorney General

JUDGE ZOLLIE STEAKLEY
Special Assistant Attorney General

RICK GILPIN
Chairman, Opinion Committee

Prepared by Susan L. Garrison
Assistant Attorney General