CHARLES HARRISON v. THOMAS M. HARWOOD.

Where the plaintiff in attachment had acquired a lien by a levy, other creditors could not intervene upon the mere ground that the defendant was insolvent; and hence they were entitled to a *pro rata* division with the attaching creditor. The law favors the diligent. (Paschal's Dig., Art. 149, Note 262.)

A motion was made in the court below to quash and dimiss the attachment for various reasons; some, for matters alleged to be apparent upon the face of the attachment; others, for irregularities in the execution of the levy by the ministerial officer. Among the first enumerated, were, that causes for

the attachment were stated and sworn to, both in the petition and the affidavit; that the affidavit was made, the bond approved, and the attachment was · issued and attested by the deputy clerk, though in the name of the principal clerk; that the attachment was for a different amount from that claimed in the petition ; and that the attachment had performed its office when an appearance had been secured. Neither of these grounds is sustained by the facts in the record nor by the law. It is no valid objection, that the party swore to the petition and made a written affidavit besides. If good cause were stated in the petition or the affidavit, it was sufficient to warrant the issuance of the writ of attachment. (Paschal's Dig., Arts. 138, 214, Notes 257, 259.)

The deputy clerk, *ex virtute officii,* may perform all official acts in the name of the principal clerk which the principal himself can perform in discharging the duties of clerk. Where duties are imposed upon the clerk by statutes, not necessarily belonging to his office as clerk, the rule is different. (Paschal's Dig., Arts. 142, 496, 501 )

A large discretion is left to the officer by the statute, in fixing the valuation of the property levied upon. The policy of the law is simply to hold the property impounded till final judgment for the ultimate satisfaction of the debt. (Paschal's Dig., Art. 149, Note 262.)

Interrogatories may be so framed as to bring out conversations, even though they may be suggestive of the matters inquired of.

There is a difference between the mere wrongful suing out of an attachment (upon a ground which may not exist) and the suing it out with malice. If the defendant take the first ground, he should plead upon the bond. If upon the latter, he may rely upon all the incidental injuries.

The wrongful suing out an attachment, and the malice with which it may be done, are different causes of action. The one would be an action *ex contractu;* the other, an action *ex delicto.* The one would survive to the administrator or executor; the other would die with the person. With the greatest latitude allowed in our pleading, this court has repeatedly recognized the distinction here taken. This court has heretofore ruled that the malicious suing out of the writ and the mere wrongful suing it out are separate and distinct grounds of defense; and under an answer setting forth one of the grounds proof cannot be introduced establishing the other. (Paschal's Dig., Art. 3446, Note 797, p. 565.)

Where the evidence sustained the charge of the court, and warranted the verdict as to the purpose of selling the defendant's property, the judgment will not be disturbed.

ERROR from Gonzales.    The case was tried before Hon. J. J. HOLT, one of the district judges.

The petition set out the note and the credits, and stated the balance due; averred that the defendant was about to

fraudulently transfer his property; that the attachment was not prayed for to injure the defendant, &c. The petition was verified under the 138th section of the act to regulate proceedings in the district court, (Paschal's Dig., Art. 138,) and the attachment oath (Art. 142) was substantially superadded. The oath was made before the deputy clerk of the district court. The principal contest turned upon the motion to quash upon this ground.

Peck & Co. and Conley & Co. intervened as creditors of the defendant, Harrison, and set up that Harwood, knowing of the insolvency of Harrison, had got an unconscientious advantage by levying his attachment on his only available assets. The court sustained exceptions to these interventions. The defendant pleaded the illegal and malicious suing out the attachment in reconvention. The trial turned upon this plea.

The plaintiff proved that the defendant offered to sell the cotton attached, saying that he was broken up, and that his creditors should have none of the proceeds; that he offered to sell his sheep for cash, but refused to sell for his own paper at fifty cents in the dollar, saying that he could not pay his debts; and in both cases he said he wanted the money for the females of his family.

The defendant proved that the attachment put it out of his power to compromise with his creditors at twenty-five cents in the dollar; that the levy greatly annoyed him, and caused him to take to drink; and, in the opinion of one witness, the good man was damaged $2,000 in his feelings. The court charged the jury to determine the reasons existing for suing out the attachment and the motives from all the evidence in the case, and to find against the intervenors. There were several bills of exception, but they were immaterial. Verdict and judgment for plaintiff. The defendant prosecuted error.

*Parker & Miller,* for plaintiff in error.—I. Exception is,

that the deputy district clerk cannot approve attachment bonds and issue writs of attachment.

Judges and clerks of the district court and justices of the peace are authorized to approve bonds and issue writs of attachment. (Paschal's Dig., Arts. 142, 143, 145.)

Under a similar statute this court held, that the deputy clerk could not take depositions. (5 Tex., 264; 6 Tex., 574.)

The act of the 9th of February, 1856, provides that deputy clerks of the district court shall have power to take depositions, and to do all other acts that may be lawfully done by their principal. (Paschal's Dig., Art. 496.)

Attachment laws, being in derogation of common right, are to be strictly construed against the plaintiffs. (1 Tex., 17; 2 Tex., 239; 7 Tex., 315; Dal. Dig., 601.)

II. The levy recites that it was upon an amount of cotton in the seed, supposed to be four or five bales. It should have been weighed or described in such way that it could be identified. (Drake on Attach., §§ 191, 1981; Messner v. Lewis, 20 Tex., 225; 23 Tex., 91; 3 Iowa, 387.)

III. The deposition of Monroe was wrongly admitted. The commission must be directed to the county of his residence. (Paschal's Dig., Art. 3726.)

The deposition, having been taken in the county where the court was held, could not be used in evidence until plaintiff or his attorney had made the affidavit required by law. (Paschal's Dig., Art. 3733.)

IV. This first charge asked by defendant was, that the affidavit of plaintiff for the writ of attachment was no evidence to go to the jury of the facts therein stated. It was argued as evidence by plaintiff's counsel, and we asked this charge to counteract it, and had the right to have it given to the jury. The other testimony is so meagre that it must have influenced the jury.

The second charge, asked by defendant and refused, gave the definition of the clause of the statute, to transfer prop-

erty for the purpose of defrauding creditors, as laid down
in Hopkins v. Nichols, 22 Tex., 206; and the third instruc-
tion asked was equally applicable to the case, and should
have been given.

The fifth instruction asked was to the effect, that because
a party is in failing circumstances and unable to pay his
debts is no reason for suing out an attachment. (13 Tex.,
368; 14 Tex., 662; 17 Tex., 625.)

*Albert N. Mills*, for the defendant in error.

LINDSAY, J.—This was a suit by attachment, brought by
the defendant in error against the plaintiff in error, founded
upon a promissory note. The ground of the attachment
was that the plaintiff in error was about to transfer his
property for the purpose of defrauding his creditors. The
defense was a plea in reconvention, alleging that the at-
tachment was maliciously sued out for the purpose of in-
juring and harassing the defendant. Other creditors of
the defendant intervened in the cause, and claimed a share
in the proceeds of the property levied upon by the attach-
ment, upon the ground that the defendant was notoriously
insolvent, and that the property seized by the levy was the
only property which the defendant possessed. The court
dismissed the petitions of the intervenors; and upon the
trial there were a verdict and judgment for the attaching
creditor.

The court very properly dismissed the petitions of the
intervenors. The law favors the diligent and not the sloth-
ful. If parties will sleep upon their rights until another
has discovered the means of securing his own, and avails
himself of the methods furnished by law to coerce his debt-
or to comply with his obligation to him, it would neither
be conformable to right reason nor to the principles of
justice to suffer others to step in and demand a distribution
of the fruits of his diligence. The party acquired a lien by

the levy of his attachment, which gave him a preference over all other creditors upon the specific property attached. Though there be some decisions of enlightened jurists to the contrary, we think both reason and the weight of authority are in favor of the lien of the attaching creditor. Otherwise, we can see no reason why attachment laws were enacted for any purpose, except in favor of a "creditor's bill." The object of the law seems to be intended rather to afford a provisional remedy to the individual creditor.

A motion was made in the court below to quash and dismiss the attachment for various reasons: some for matters alleged to be apparent upon the face of the attachment; others, for irregularities in the execution of the levy by the ministerial officer. Among the first enumerated were, that causes for the attachment were stated and sworn to both in the petition and the affidavit; that the affidavit was made, the bond approved, and the attachment was issued and attested by the deputy clerk, though in the name of the principal clerk; that the attachment was for a different amount from that claimed in the petition; and that the attachment had performed its office when an appearance had been secured. Neither of these grounds is sustained by the facts in the record nor by the law. It is no valid objection that the party swore to the petition and made a written affidavit besides. If good cause was stated in the petition or the affidavit, it was sufficient to warrant the issuance of the writ of attachment. The deputy clerk, *ex virtute officii*, may perform all official acts in the name of the principal clerk, which the principal himself can perform in discharging the duties of clerk. Where duties are imposed upon the clerk by statutes, not necessarily belonging to his office as clerk, the rule is different.

Among the second class of reasons were, that the levy was excessive; that the valuation by the sheriff of the property attached was uncertain, because assessed in currency and specie; that it did not sufficiently describe the property,

because a part of the property levied on was cotton in the seed, which was conjecturally estimated at a definite number of bales in the lint. A like remark may be made of this class of objections as of the first. A large discretion is left to the officer by the statute in fixing the valuation of the property levied upon. The policy of the law is simply to hold the property impounded till final judgment for the ultimate satisfaction of the debt. When the debt is paid, the whole of it, little or much, if not already regained by replevin, is restored to the owner.

The court, therefore, committed no error in overruling the motion to quash and dismiss the attachment. The first and second assignments of error, which together embrace the above points, were not well taken.

The third, fourth, and fifth assignments of error relate to the overruling of exceptions to a deposition. The witness was a resident of Brazos county, and the deposition was taken in the county of Gonzales, where the trial was had, and his deposition was taken in Gonzales county. The case is expressly provided for in the statute in a twofold manner: It may be taken either because he resided without the county, or because he was about to leave, which the law would presume from the acknowledged place of his domicil. The objection was wholly untenable, if it had been in writing. The defendant got the benefit of a cross-examination, and could not be, nor was he, prejudiced for that cause. But it is also insisted that the answers to the first fourteen interrogatories, saving the first, ought not to have been read to the jury. Why we do not readily perceive. The questions were not leading. They simply directed the attention of the witness particularly to the special subject of inquiry. It was but giving a detailed account of conversations with the defendant about his property and his avowed object and purpose in disposing of it. All this was quite proper, in an investigation of the issue formed by the pleading, to enable the jury to determine

whether the plaintiff had just cause for the impetration of the writ of attachment, or whether he was actuated by malice in resorting to this stringent remedy for the collection of his debt. The same reasoning applies to the sixth assignment of error.

The seventh and eighth assignments were for the refusal of the court to permit witnesses to answer questions which would have been proper enough upon a different issue— the wrongful suing out of the attachment—and which the statute obviously contemplates to mean the issuance without adequate cause, and not maliciously. The issue in this case, however, was, whether it was sued out maliciously. The actual damage sustained by the defendant for a wrongful suing out of the writ did not conduce in the slightest degree to elucidate the question of malice or no malice in the obtention [?] of the writ, the precise issue in the controversy. The statute provides a bond for the mere wrongful suing out of the writ, but it authorizes no covenants against malice. To make an issue upon the mere question of the wrongful suing out of the attachment, the bond must be pleaded and relied upon, because in that bond is an express covenant against the wrongful suing out; and upon such an issue proof is legal and proper to show the actual damage sustained by the defendant. The measure of damages is altogether different in the two states of the case. The *gist* of this defense was the malice of the plaintiff in the initiation of the proceedings. When that was established, all the incidental injuries sustained by the defendant might have been introduced by way of aggravation, and a verdict in general, not in special damages found by the jury. Pleading and practice must be circumscribed by some fixed rules, else judicial administration must ever be subject to the caprice or the arbitrary will of each incumbent upon the bench, instead of being controlled by an unerring law. They are two different causes of action, and must be relied upon as two different grounds of defense. The one

would be an action *ex contractu;* the other, an action *ex delicto.* The one would survive to the administrator or executor; the other would die with the person. With the greatest latitude allowed in our pleading, this court has repeatedly recognized the distinction here taken. This court has heretofore ruled that the malicious suing out of the writ and the mere wrongful suing it out are separate and distinct grounds of defense; and, under an answer setting forth one of the grounds, proof cannot be introduced establishing the other. Suppose that, after the defense of the malicious proceeding had been entered, the defendant had died before verdict and judgment; would the right of defense have survived to the personal representative? If so, and there should be a recovery upon the plea of reconvention in favor of the personal representative, it would render the principle, that actions sounding in *tort* die with the person, nugatory and absurd, and there would be no unity, no fixedness, no stability in our adjudications. It may be, that under our extremely liberal system both defenses may be allowed when pleaded and relied upon. But to give anything like homogeneity to our judicial determinations, in the contingency of the death of the defendant before judgment, one of the defenses would have to abate, as only one of the rights of defense could survive to the personal representative; for it cannot be plausibly contended that the administrator or executor would have the right to revive such a defense, unless we are prepared to overthrow and disregard the well-settled principles of law recognized by this court, as well as the courts in all the American states.

As the charges given by the court were conformable to the view of the law which we have indicated in this opinion, and those asked by the defendant are in antagonism thereto, the assignment of errors upon the law, as expounded at the trial, we regard as not well taken, and need not be further commented on.

We think the evidence adduced upon the trial fully and amply sustained the verdict of the jury and the judgment of the court. It was incontestably established, by several witnesses, that the defendant was endeavoring to dispose of and transfer his property for the avowed purpose of keeping it from paying his creditors. He admitted in his negotiations for its disposition that he wished to get it out of the reach of creditors, and to appropriate the proceeds to other uses—uses laudable enough in themselves; but which should never be tolerated, when attempted, if in contravention of that honest maxim, that a man must be just before he is generous. We affirm the judgment of the court below.

·AFFIRMED.