## LOKEY v. STATE.    (No. 9786.)

(Court of Civil Appeals of Texas.    Dallas.
Feb. 19, 1927.)

1. **Insane persons** ⚖=63—**State held entitled to reimbursement for care of public patient at asylum to extent of ability of his estate to respond (Vernon's Sayles' Ann. Civ. St. 1914, arts. 137, 138).**

Where person, adjudged lunatic, and confined in state hospital for insane as public patient, maintained and treated at public expense, was owner of land at time of adjudication, which continued to be property of his estate, state could recover against estate to extent of ability of estate to respond for reasonable value of board, clothing, treatment, and support, under Complete Tex. St. 1920, or Vernon's Sayles' Ann. Civ. St. 1914, arts. 137, 138, providing state shall be entitled to reimbursement for keeping public patients who are not indigent.

2. **Insane persons** ⚖=63—**State could sue estate of public patient in asylum for support, notwithstanding statute prescribed special remedy (Vernon's Sayles' Ann. Civ. St. 1914, arts. 138, 158, 159).**

Complete Tex. St. 1920, or Vernon's Sayles' Ann. Civ. St. 1914, art. 138, providing state shall be entitled to reimbursement for caring for public patients at asylum, who are not indigent, in mode provided by articles 158, 159, by citation from county judge addressed to guardian, *held* not to provide exclusive remedy for state's collection from estate of insane persons of debt created by article 138.

3. **Evidence** ⚖=333(1)—**Testimony of superintendent of asylum on per capita cost of maintaining inmates, collected from records which he supervised, held admissible in state's action against lunatic's estate (Vernon's Sayles' Ann. Civ. St. 1914, art. 125).**

In action by state against estate of insane person for his care and support, testimony of superintendent of asylum as to his reports on per capita cost of maintaining public patients, and testimony that reasonable compensation for support was same amount as per capita cost, *held* admissible, where superintendent made reports which are required by Complete Tex. St. 1920, or Vernon's Sayles' Ann. Civ. St. 1914, art. 125, on basis of hospital records to which he had access, and which he supervised.

Appeal from District Court, Collin County; F. E. Wilcox, Judge.

Action by the State against G. W. Lokey, guardian of the estate of John Sansom, a lunatic. Judgment for the State, and defendant appeals. Affirmed.

H. L. Davis, of McKinney, for appellant.
H. Grady Chandler, Asst. Atty. Gen., for the State.

JONES, C. J.    This appeal is duly prosecuted from a judgment in the district court of Collin county for the sum of $2,110.05, in favor of the state of Texas against G. W.

Lokey, as guardian of the estate of John Sansom, a lunatic. The following are the facts:

John Sansom was duly adjudged a lunatic in 1892, and, since September 7, 1892, has been confined in the North Texas Hospital for the Insane as a public patient, and during all of said time has been maintained and treated at public expense. The maintenance and treatment received by him was that given to indigent patients, and he was required to perform manual labor for the hospital. At the time he was adjudged insane there was a finding of the jury that he was the owner of 48.2 acres of land, of the value of from $800 to $1,000. This land at the time of the trial was of the value of $1,500. During the time of his confinement G. W. Lokey has been his duly qualified and acting guardian, and in such capacity has had charge of such estate. It does not appear that any part of the rents from this estate has been used for Sansom's maintenance in said hospital. Though the record showing his ownership of said land has been in the possession of the authorities at the hospital, no effort had been made to reimburse the state out of his estate for any expense incurred in his behalf, until this suit was filed on behalf of the state by the county attorney of Collin county. This suit sought recovery against the guardian for the sum of $8,220 as the reasonable value for board, clothing, treatment, maintenance, and support of Sansom since his admission into the hospital. The trial resulted in a judgment in favor of the state for the amount of the judgment; recovery being allowed for the years 1912 to 1923, inclusive.

[1] The correctness of this judgment is challenged by proper assignments of error, which make, in effect, the contention that, as Sansom had been received into the hospital and maintained as an indigent patient, without any deception having been practiced in his behalf to secure for him this status, no common-law action will lie to recover from the guardian of his estate the expense of his maintenance.

A reversal of the case is urged because of the refusal of the trial court to sustain objection made to the evidence offered by the state to prove the cost of maintaining and treating said patient. The character of this evidence and the objection urged against it will appear in the discussion of this assignment of error.

The decisions applying the rule of common law to suits of this character are not uniform. In some jurisdictions it has been held that the state, having established hospitals for the insane, which are largely charities, and having provided, for the protection of society, that insane persons shall be confined therein, has no common-law right of re-

covery against one who receives the benefit of such public charities, and his estate cannot be burdened with such liability. In other jurisdictions it is held that, in the absence of statute, the state can recover from the estate of an insane person the reasonable value of maintenance furnished to him on the ground that those things furnished as required by law are necessaries, and his estate can be charged with such burden. 14 R. C. L. p. 566. It is not necessary to discuss which line of decisions should be adopted in this state, for the declared policy of our state is to make the estate of the lunatic chargeable with his maintenance, where, as in the instant case, this estate does not consist of exempt property. Since the trial of this case, the law controlling the admission of inmates into our hospitals for the insane has been changed by amendment, for which reason we will use the citation in Vernon's Complete Texas, Statutes 1920. Article 137, supra, reads:

"All indigent public patients shall be kept and maintained at the expense of the state."

Article 138, supra, reads:

"All public patients not indigent shall be kept and maintained at the expense of the state in the first instance, but in such cases the state shall be entitled to reimbursement in the mode pointed out in articles 158 and 159 of this chapter.".

These statutes were in force at the time of the admission of the patient as an inmate of the said hospital, and fixed his status in reference to whether he was admitted as an indigent patient, to be kept and maintained at the expense of the state, or as a patient to be kept and maintained at the expense of the state in the first instance, but the state to be reimbursed out of his estate. Under the undisputed evidence appellant's ward, Sansom, had the status of the latter class. In fact, article 138 above quoted has the force and effect of an express contract by the state with appellant, as guardian of the patient, that the state will admit him in said hospital as a public patient, but, for the expense incurred of keeping and maintaining him, the state must be reimbursed from his estate, in so far as same may be able to respond thereto. As appellant's ward has been kept and maintained at the expense of the state from the time he was admitted until the trial of this case, and there has been no reimbursement of this expense, it is clear that an obligation for such reimbursement, to the extent of the ability of the ward's estate to respond, has been created in favor of the state, and appellant, as guardian of such estate, is liable therefor to the extent that the estate is capable of responding.

[2] Articles 158 and 159, supra, point out a procedure designed to enforce, from time to time, collection of the debt due the state by reason of this obligation, as it arose, during the confinement of the patient in said hospital. This procedure was not followed by the state in this suit; it being an action brought in the ordinary form to enforce payment of a debt. Is the said statutory procedure exclusive of any other procedure to establish this debt and enforce its payment? We think not. The effect of the statutes designating said procedure is only to point out a remedy for the debt created, and it does not follow that the remedy prescribed created the debt. The debt arose because of the services bestowed for the benefit of the patient, who was not indigent. We therefore conclude that the remedy given by said articles of the statute is only cumulative of the remedy that theretofore existed for the establishment and collection of debts. This precise question has been so decided by the Court of Civil Appeals for the Fourth Supreme Judicial District. Luder v. State, 152 S. W. 220.

[3] Was there error in the admission of the evidence by which the state made out its case for reasonable compensation for the support of the lunatic? This evidence was given by deposition by Dr. Powell, who has been connected with said hospital since the year 1900, and from 1911 to the time of the trial has been superintendent thereof. He testified from his own knowledge that Sansom had been an inmate of the said hospital since 1900; that during this time the state furnished Sansom with board, clothing, medical attention, assistance, support, and maintenance; that nothing has been paid the state for the upkeep of Sansom during the time he (Powell) has been superintendent; that he had access to, and supervision of, the records of the hospital, but did not make them himself; and that all the reports of the per capita cost of maintaining inmates of the hospital were made by him since August 31, 1911, from these records. These reports were required to be made by article 125, supra, during the first days of January and July of each year. The witness did not have independent knowledge of the per capita cost, but was permitted, over the objection of appellant, to testify from the reports to the per capita cost of maintaining public patients for the years 1912 to 1923, inclusive, and over such objection was permitted to testify that the reasonable compensation for the support of Sansom was the same amount as said per capita cost. We do not think this was error, and overrule the assignments of error in reference to this issue.

There being no reversible error pointed out, it is our opinion that this case should be affirmed.

Affirmed.