## WISEMAN v. STATE.

### No. 9725.

Court of Civil Appeals of Texas.
San Antonio.

Feb. 26, 1936.

Rehearing Denied May 13, 1936.

Wiseman & Murray, of Floresville, for appellant.

D. Richard Voges, of Floresville, and D. O. Klingemann, of Karnes City, for the State.

SMITH, Chief Justice.

Since October 27, 1914, except for an interval of fifteen weeks, Charles E. Allen, N. C. M., a resident of Wilson county, has been confined as an inmate in the San Antonio State Hospital, which was known as the Southwestern State Insane Asylum prior to the year 1925. He has been maintained there at the expense of the state, without cost to his estate.

In 1933 the state, through the county attorney of Wilson county, brought this action against W. R. Wiseman, guardian of Allen's estate, to recover the reasonable expense for the care and maintenance of Allen during said period. In a trial before the court without a jury, the state recovered of the guardian for the full period of Allen's confinement, at the rate of $4.90 per week, agreed by the parties to be the reasonable cost of the burden. Wiseman has appealed.

It is conceded that the action was one as at common law, without regard to the statutes upon the subject. It is contended by the state that its right to be reimbursed for the cost of maintenance of insane persons, who are not indigent, exists, and has all the while existed, under and by virtue of the common law; and admitting that a like right of action, as well as the procedure for enforcing such right, is provided by express statute, the state contends that the statutory right and remedy are but cumulative of the common-law right and remedy, resorted to by the state in this case. On the other hand, appellant contends that, regardless of the doubtful common-law right, when the Legislature took cognizance of the subject and enacted laws giving the state such right of action, and prescribing the procedure therefor, such statutes superseded the common law, if the latter in fact ever gave such right; that the statutory right became exclusive of whatever right, if any, existed at common law.

At the beginning of Allen's confinement in the state institution, in 1914, the Revised Statutes of 1911 were in effect, except as they had been amended by intervening acts. Those statutes set up a complete system for the continuation, establishment, and maintenance of institutions for the care of insane persons by the state, including the subject of the state's responsibility for their confinement, care, and maintenance, and the liability to the state, of such persons or their legal representatives, for the cost of their care and maintenance.

In the latter respect it was provided (article 137, Vernon's Sayles' Annotated Civil Statutes 1914) that "all indigent public patients shall be kept and maintained at the expense of the state," and (article 138) that "all public patients not indigent shall be kept and maintained at the expense of the state in the first instance, but in such cases the state shall be entitled to reimbursement in the mode pointed out in articles 158 and 159." Article 158 was repealed by substituted provisions in the Acts of 1913, c. 163, p. 341 et seq., in which the procedure theretofore prescribed for the apprehension, adjudication, and incarceration of insane persons, as well as procedure for determining their solvency for the purpose of charging their estate, was revised.

In 1925, however, the Legislature completely revised the laws relating to the administration of the insane asylums, changing the name thereof to "State Hospitals for the Insane." In that revision the existing article 138, providing that the state shall be entitled to reimbursement for the expense of keeping and maintaining solvent patients, was expressly repealed, and in lieu thereof (in article 3189) it was provided, simply, that the State Board of Control "may make contracts fixing the price for the support of patients in any State hospital * * * at a sum not to exceed the actual cost of such patient or for such part thereof as such relative or estate may be able and agree to pay, and binding the persons making such contracts to payment thereunder." Acts 1925, 39th Leg.,Reg. Sess., c. 174, p. 407. Further provision was made in the act for the mode of ascertaining the ability of the estate to pay, and for enforcement of the state's claim for such expense. In such revision and express repeal of the existing statutes providing for liability, to the state, of solvent inmates of the asylums, there was no provision saving the right of the state to recover under the statutes thereby repealed.

It seems necessary, or at least appropriate, to first determine if, prior to the statutory declaration that the state was entitled to reimbursement for the expense of maintaining solvent inmates of the asylum, the state had such right to reimbursement under the common law. In this case the state insists it had such right at common law, and was entitled to recover without regard to the presence or absence of a statutory right, and exclusive thereof; that the statutory right and remedy were merely cumulative of the existing common-law right and remedy.

■ This court has reached the conclusion that the right of the state to reimbursement for care and maintenance of demented persons did not exist at common law, and that the state's right and remedy therefor existed, and has ever existed, by reason only of the statutes enacted for that purpose. 32 C.J. p. 686, §§ 373, 374; 14 R.C.L. p. 566, § 18. It is said in 32 Corpus Juris, p. 687: "While there is some dicta to the effect that, under the common law, the estate of a lunatic was liable for his maintenance at public expense, the statutes conferring the right on public authorities to sue being merely declaratory of the common law and providing a remedy for the collection of an existing debt, it is generally held that at common law, and in the absence of express contract * * * the public authorities may not recover from the lunatic or his estate the expenses incurred on his account * * *."

Dicta, such as mentioned in Corpus Juris, occurs in the case of Luder's Adm'r v. State (Tex.Civ.App.) 152 S.W. 220, decided in 1912, by this court in an opinion by Justice Taliaferro. In his opinion Justice Taliaferro said that the claimed right did exist at common law, but the holding was not necessary to the decision, the effect of which was, only, that the remedy prescribed in the statute declaring the right of the state to reimbursement in such cases was cumulative, and not exclusive, of the common-law remedy for debt. In that case the suit was brought by the state against the demented person's administrator to recover under the existing statute (art. 138, R.S.1911), and this court affirmed the judgment of the trial court in favor of the state under the provisions of that article, giving the state the right of recovery, without following the procedure prescribed

by the statute. The language used in that opinion, to the effect that the state had a right of action under the common law, will be regarded as dictum, and therefore not binding upon this court.

The only other case in this state involving this question is that of Lokey v. State (Tex.Civ.App.) 291 S.W. 966, in which it was held, as in the Luder Case, simply, that the state could recover under the 1911 statutes, apparently in force when the judgment was rendered therein by the trial court, without pursuing the specific statutory procedure therefor. In that case, while citing the Luder Case to support the holding that the statutory *remedy* need not be pursued in enforcing the statutory *right,* the court expressly refrained from passing upon the question of the common-law right of the state to reimbursement. This court, at this time, need not, and does not, pass upon the holding in the two cases cited, to the effect that the statutory remedy need not be resorted to in a suit to enforce the statutory right. But we do hold that the right of the state to reimbursement in such cases did not exist at common law; that it was created by statutory enactments, going back to the early years of the state, and altered from time to time by subsequent legislative enactments.

■ But, whether or not the state's right of reimbursement existed at common law prior to the enactment of statutes therefor, when the Legislature passed statutes comprehending the entire subject of the establishment, maintenance, and operation of a system of asylums for the insane, and created the right of action in the state to restricted reimbursement for the expense of caring for solvent lunatics, the passage of such legislation had the effect of superseding all previous systems and laws, whether common or statutory, respecting the same subject. Etter v. Missouri Pac. Ry. Co., 2 Willson, Civ.Cas.Ct.App. §§ 58, 59; Bryan v. Sundberg, 5 Tex. 418, 423; Stirman v. State, 21 Tex. 734; St. Louis & S. W. Ry. Co. v. Kay, 85 Tex. 558, 22 S.W. 665.

■ At the time of Allen's first confinement in the state institution, in 1914, the right of the state to reimbursement for his care and maintenance existed only by virtue of the express provisions of article 138, R.S. 1911, limiting recovery to $5 per week. When that article was expressly repealed by the act of 1925, supra, with no provision therein for preserving causes of action arising thereunder in favor of the state, the state's right to recover upon such causes of action terminated. State v. Andrews, 20 Tex. 230; Etter v. Missouri Pac. Ry. Co., 2 Willson, Civ.Cas.Ct.App. §§ 58, 59, 60; Galveston & W. R. Co. v. City of Galveston, 96 Tex. 520, 74 S.W. 537; Employers' Liability Assur. Corporation v. Young Lumber Co., 122 Tex. 647, 64 S.W.(2d) 339; Stephens County v. Hefner, 118 Tex. 397, 16 S.W.(2d) 804; Galveston, H. & H. R. Co. v. Anderson (Tex.Civ.App.) 229 S.W. 998; Texas Ind. Ins. Co. v. Smith (Tex. Civ.App.) 73 S.W.(2d) 578; State v. Texas & N. O. Ry. Co., 58 Tex.Civ.App. 528, 125 S.W. 53; Ortiz Oil Co. v. Railroad Commission (Tex.Civ.App.) 62 S.W.(2d) 376. The judgment was therefore erroneous in awarding recovery to the state for the expense incurred in caring for Allen prior to the repeal of article 138, in 1925.

■ This brings us to a consideration of that portion of the judgment awarding reimbursement to the state for the expense of caring for Allen after the repeal of article 138, in 1925. In the repealing act, as has been shown, the Legislature revised many of the provisions of the statutes governing state hospitals for the insane, including, particularly, the subject of liability of inmates' estates for the expense of their care and maintenance. In this revision the then existing article 138, providing that solvent lunatics' estates should be liable for the cost of maintaining them in the state institution, was expressly repealed, and in lieu thereof it was provided that the Board of Control may make contracts with relatives, or the estates, of demented patients "fixing the price" for the support of the patients "at a sum not to exceed the actual cost of [the care of] such patient or for such part thereof as such relative or estate may be able and agree to pay," and that the board is "authorized to demand an investigation to determine whether or not a patient is possessed or entitled to property and whether or not some other person is legally liable for his support and to pay therefor," and providing a mode of procedure before the county judge to determine and render judgment for the "amount due it for the support and maintenance of such patient." Rev.St.1925, art. 3189. It is problematical whether this procedure is applicable to the enforcement of the permissive contract li-

ability of the person assuming such liability, or is intended as a remedy independent of that liability. But it is not necessary to decide this collateral question, for it is plain that as the prior statutory provision, in article 138 (that in cases of all public patients not indigent "the state shall be entitled to reimbursement in the mode pointed out in" other articles), was expressly repealed by the act of 1925, supra, the state was by the latter act relegated to the mere right of contract for reimbursement, or by judicial ascertainment through the county judge, at the instance of the Board of Control. It is conceded, and the record shows, that the state did not contract for the liability here sought to be enforced against appellant, or establish that liability through the process prescribed by the superseding act of 1925. As the state was relegated to that right and remedy, and did not assert or pursue them in this case, it follows that the judgment of the court below, admittedly recovered regardless and independently of the statutory right and remedy, must be reversed, and judgment will be here rendered that the state take nothing by reason of this suit, and appellant go hence, with his costs.

Reversed and rendered.