The STATE of Texas, Appellant,

v.

Mamie Corine STONE et al., Appellees.

No. 4953.

Court of Civil Appeals of Texas.

Beaumont.

Sept. 23, 1954.

Joseph A. Janeke and R. G. Poling, Attorney General's Department, Austin, for appellant.

Ross Hightower, Livingston, Orville C. Walker, San Antonio, for appellees.

ANDERSON, Justice.

The State seeks reimbursement out of the estate of Walter J. Mills, deceased, for the cost of supporting, maintaining and treating George Mills, an adult son of the decedent, in the Austin State Hospital. Walter J. Mills never at any time expressly agreed, either in writing or orally, to reimburse the State any part of such cost; and the State relies altogether on the provisions of Article 3196a, V.A.C.S., as the basis for the right asserted by it. We here quote the provisions of the statute which will require discussion in this opinion:

"Section 1. Patients admitted to State hospitals and State psychopathic hospitals shall be of two classes, to wit:

"Indigent patients;

"Non-indigent patients;

"Indigent patients are those who possess no property of any kind nor have anyone legally responsible for their support, and who are unable to reimburse the State. This class shall be supported at the expense of the State.

"Non-indigent patients are those who possess some property out of which the State may be reimbursed, or who have someone legally liable for their support. This class shall be kept and maintained at the expense of the State, as in the first instance, but in such cases the State shall have the right to be reimbursed for the support, maintenance, and treatment of such patients.

"Sec. 2. Where the patient has no sufficient estate of his own, he shall be maintained at the expense:

"Of the husband or wife of such person, if able to do so;

"Of the father or mother of such person, if able to do so.

"Sec. 3. The State Board of Control is authorized to demand and conduct investigations in the County Court to determine whether or not a patient is possessed of or entitled to property and/or whether or not some other person is legally liable for his support, maintenance, and treatment and to pay therefor, and to have citation issued and witnesses summoned to be heard on said investigation.

"Sec. 4. The State Board of Control, directly or through an authorized agent or agents, may make contracts fixing the price for the support, maintenance, and treatment of patients in any State hospital or psychopathic hospital at a sum not to exceed the cost of same or for such part thereof as such respective patient, his relatives or guardian of his estate may be able to and agree to pay, and binding the per-

sons making such contracts to payment thereunder.

"Sec. 5. Upon the written request of the State Board of Control the County or District Attorney, or in case of the refusal or inability of both to act, the Attorney General, shall represent the State in filing a claim in Probate Court or a petition in a Court of competent jurisdiction, wherein the guardian of such patient and/or other person legally liable for his support, may be cited to appear then and there to show cause why the State should not have judgment against him or them for the amount due it for the support, maintenance, and treatment of such patient; and, upon sufficient showing, judgment may be entered against such guardian or other persons for the amount found to be due the State, which judgment may be enforced as in other cases. A verified account, sworn to by the superintendent of the respective hospitals or psychopathic hospitals wherein such patient is being treated, or has been treated, as to the amount due shall be sufficient evidence to authorize the Court to render judgment therein. * * *"

Having been first duly adjudged to be a person of unsound mind and ordered committed to a state institution, George Mills was admitted to the Austin State Hospital as a patient and inmate on November 21, 1932. He was then approximately 25 years of age, having been born on September 23, 1907. He remained in the hospital as a patient and inmate continuously, and was supported, maintained and treated by the State at its expense, from November 21, 1932, until after his father's death on February 16, 1951. The State seeks reimbursement at the rate of five dollars per week for the full period commencing November 21, 1932, and extending through January 31, 1951. The aggregate amount thus arrived at is $4,729.77. Upon trial of the case it was stipulated that $5.00 per week had been the actual cost of maintaining the patient during the time for which reimbursement is sought; and a verified account showing the amount due, sworn to by the superintendent of the Austin State Hospital, was

treated by stipulation of the parties as being in evidence and as being correct.

George Mills was of sound mind until after he reached his majority, and for a time after reaching his majority he was employed for wages by an employer other than his father. However, at the time he entered the hospital he was possessed of no property of any kind. He did not subsequently come into possession of any property, and was never possessed of funds with which to reimburse the State any part of the expense incurred by it in his behalf. He was never married, had no issue, and no guardian of either his person or his estate was ever appointed.

Walter J. Mills, the father, lived in Polk County, Texas, and such estate as he possessed was there situated, from the time his son entered the hospital until his own death. No demand was ever made of him during his lifetime to reimburse the State any part of the expense incident to his son's support, maintenance and treatment; and no legal proceedings seeking such reimbursement were ever instituted against him. He died testate on February 16, 1951. Subsequently his will was duly admitted to probate in the probate court of Polk County, and on March 21, 1951, letters testamentary were issued to the independent executor named in the will. No claim on behalf of the State appears to have been presented to the executor for allowance during the time he acted in that capacity.

Walter J. Mills left an estate, consisting of both real and personal property, of the net value of approximately $21,000; and upon trial of the case at bar it was stipulated that the inventory and appraisement on file in the probate proceedings "reflects property owned, or its equivalent in kind, that Walter Mills owned prior to and during the period of commitment of George Mills in the State Hospital at Austin, Texas." He bequeathed all of his property, both real and personal, to his two daughters, Mamie Corine Stone and Carrie Jane Walker, to the complete exclusion of his son George.

This suit was instituted against Mamie Corine Stone and Carrie Jane Walker, as the distributees of their father's estate, as is provided for by Art. 3464, V.A.C.S., their husbands being joined pro forma. The defendants admit in their answer that the "estate devised [by the will of Walter J. Mills]· was delivered to the respective devisees thereunder, by the Independent Executor of said estate"; and, crediting allegations contained in the plaintiff's petition, this appears to have occurred on or about June 2, 1951.

The plaintiff's amended petition, on which it went to trial, and which was filed May 25, 1953, indicates that the suit was originally instituted sometime during April, 1953.

The defendants answered by general denial, by a plea of the two-year statute of limitation (setting up that more than two years elapsed between the death of Walter J. Mills and the filing of suit), and by pleas, in substance: that they themselves were neither liable nor suable under the statute; that such cause of action as the State may have had against Walter J. Mills was not of a nature that survived the latter's death; that by failing to make claim against Walter J. Mills during his lifetime the State waived its right to make claim for reimbursement out of his estate; that since George Mills was an adult during all the time he was in the hospital, his father was not legally liable, either at common law or under the statute, for his (George's) support and maintenance therein; and that at no time while George Mills was in the hospital was his father able to pay any amount to the State for his· (George's) support, maintenance and treatment, and therefore never became liable to reimburse the State.

Trial was to the court, without a jury, and resulted in a judgment that the plaintiff, The State of Texas, take nothing. The State has duly perfected its appeal.

At the request of the State, the trial court filed its findings of fact and conclusions of law. Substantially the facts we have already recited were found, and in addition (in findings eight and nine) it was found,

in substance, that Walter J. Mills "had some property" at the time his son was committed to the hospital; that after the son was committed to the hospital there was some increase from time to time in the father's earnings; that the father maintained a home, and "cared for the remainder of his family from and after the date of the commitment of George Mills, until they had reached their majority"; that while the son was in the hospital the father had neither a large nor a steady income, and did not at any one time have on hand more than "a few hundred dollars" with which to pay bills; and that during some of the time while the son was in the hospital the father was a victim of physical infirmities which "limited his activities as a farmer."

It should be noted at this point, we think, and we shall later revert to the subject, that these last mentioned findings cannot, in our opinion, be construed as a finding that during his lifetime Walter J. Mills either was or was not able to pay for the support, maintenance and treatment of his son in the hospital. They amount to no more than findings of evidentiary matters bearing on the ultimate issue of ability to pay, and are insufficient, even, to indicate with any degree of certainty what the trial court's finding on the ultimate issue would have been if such a finding had been made.

The following were the conclusions of law:

1. "The court finds as a matter of law that the suit herein instituted seeking recovery of the estate of Walter J. Mills [is] barred as a matter of law, based on the statute of limitations."

2. "The court further finds, as a matter of law, that any cause of action resulting from the commitment of George Mills for which the estate could have been liable did not survive the death of the father, Walter J. Mills, and cannot, at this time, be impressed against said estate."

3. "The court further finds, as a matter of law, that at the time of the commitment of George Mills, who had reached his ma-

jority, the father was not liable for the support or maintenance of said George Mills to the extent that his estate would be liable or his earnings would be liable for the support of the said George Mills."

4. "The court further finds, as a matter of law, that the plaintiff could not recover against the estate in that the cause of action did not survive the father's death."

"Wherefore, the court concludes, as a matter of law, that the State is not entitled to any recovery against the defendants herein."

The State predicates its appeal on the following three points of alleged error:

1. "The error of the court in concluding that the Statute of Limitations applies to the State of Texas in this type of action."

2. "The error of the court in concluding that the plaintiff's cause of action did not survive the death of the father, Walter J. Mills."

3. "The error of the court in concluding that a father is not liable for the support of an adult child under Art. 3196a (V.C.S.)."

■■ We are of the opinion that appellant's first point is well taken, for we are unable to agree with the trial court's conclusion that the State's cause of action, if any it had, was barred by the two-year statute of limitation Art. 5526. Notwithstanding expressions to the contrary which are to be found in some of the earlier cases, we think it must now be accepted as the established law in Texas that limitation does not run against the State unless provision for it to do so is made by statute. Brown v. Sneed, 77 Tex. 471, 14 S.W. 248; Waters-Pierce Oil Co. v. State, 48 Tex.Civ. App. 162, 106 S.W. 918, error refused; Luder's Adm'r v. State, Tex.Civ.App., 152 S.W. 220. This is also the general rule in other jurisdictions. 53 C.J.S., Limitations of Actions, § 15, p. 939; 44 C.J.S., Insane Persons, § 75b(3) (b), p. 185. No statutory provision for limitation to run in a case of this kind has come to our attention.

The appellees argue that Article 5538, V.A.C.S., caused limitation to commence running against the State after Walter J. Mills had died and his executor had qualified, but we do not so construe it. Said statute provides: "In case of the death of any person against whom or in whose favor there may be a cause of action, the law of limitation shall cease to run against such cause of action until twelve months after such death, unless an administrator or executor shall have sooner qualified according to law upon such deceased person's estate; in which case the law of limitation shall only cease to run until such qualification." It contains nothing to indicate a legislative intent that limitation shall be by it caused to run in favor of the estate of a decedent where no limitation could run in favor of the decedent during his lifetime. Its only purpose is to protect the rights of the parties against the effects of limitation during a period of readjustment following the death of a party, by suspending temporarily the operation of applicable laws of limitation.

We are likewise unable to agree with the trial court's conclusion that the State's cause of action against Walter J. Mills, if any it had, did not survive the latter's death. The question of survivability must, it is true, be decided under the common law, for neither the statute under which the State seeks to recover, nor any other that has come to our attention, provides that a cause of action arising under it shall survive the death of the obligor. Johnson v. Rolls, 97 Tex. 453, 79 S.W. 513. Even so, we feel that, both on well established general principles of the common law and on the weight of authority, the cause of action asserted is clearly of a class which at common law survives. It is of that class of causes of action which are recognized as arising ex contractu; and the general rule at common law is that a cause of action founded on a contract survives the death of either party, 1 C.J.S., Abatement and Revival, § 137, p. 184; 1 Am. Jur. 78, Sec. 98; 1 C.J.S., Abatement and Revival, § 132, p. 178. Sullivan v. Associated Billposters and Distributors of United States and Canada, 2 Cir., 6 F.2d 1000, 1004, 42 A.L.R. 503, 509. The obligation, if any, of Walter J. Mills to reimburse the State was, we recognize, only quasi contractual; but it appears to be well established that causes of action based on quasi or constructive contracts survive at common law, just as do those which are based on express and implied contracts. Treasurer and Receiver General v. Sheehan, 288 Mass. 468, 193 N.E. 46, 96 A.L.R. 534, 536, and authorities there cited. In the case last cited, the question of survivability was before the Supreme Court of Massachusetts on a parallel fact situation, and the cause of action was held to have survived. And, in 1 Am.Jur. 99, Sec. 144, it is said: "The majority view is that such a cause of action does survive the death of the relative upon whom the liability is imposed."

The case has been ably and exhaustively briefed for the appellees, but we have been directed to no case—and our own research has disclosed none—in which it has been held that a cause of action such as that here asserted does not survive. In fact, the question seems to have been raised so infrequently as to indicate that the survival of such causes of action has not been seriously doubted. For example, it is said in 96 A.L.R. 537: "While the reported case (Hurley v. Sheehan (Mass.) Ante, 534) seems to be the only decision in which the question of the right to recover on the liability imposed by statute for the support of a relative against the estate of the one so liable has been discussed as a question of survival, two decisions in New York, noted infra, furnish the only dissent from the position taken in Massachusetts that the amount expended or due for support may be recovered from the executor or administrator of the one liable therefor, even though no part of the same was ever demanded or paid during his lifetime." The two New York cases referred to in the foregoing quotation, In re Cross' Estate, 99 Misc. 199, 165 N.Y.S. 710; In re Willis' Estate, 94 Misc. 29, 158 N.Y.S. 985, have been cited by the appellees in support of their position; but neither case, in our opinion, bears on the question under dis-

cussion. The Cross case turned on a matter of waiver, while the Willis case turned on the proposition that no cause of action had accrued against the decedent during his lifetime. The question of survivability of causes of action is not, we think, strictly speaking, involved in instances where no cause of action has in fact accrued in favor of or against the decedent in his lifetime; and this appears to be the general rule. 1 C.J.S., Abatement and Revival, §§ 136, 137, pp. 184, 185; Martinelli v. Burke, 298 Mass. 390, 10 N.E.2d 113, 112 A.L.R. 341.

The appellees advance the general proposition, and rely heavily on it, that a cause of action created by statute does not survive unless declared so to do by the statute itself or unless provision for its survival is made by some other statute. The proposition, on the surface at least, finds support in expressions to be found in a number of cases (principally, if not altogether, those of Illinois) collated in 1 C.J.S., Abatement and Revival, under § 153, p. 207, but we are unwilling to adopt it without qualification or reservation. We doubt, in fact, that even the courts which have declared this broad principle conceived themselves to be laying down a rule of universal application. The cases coming to our attention in which such expressions appear have been either cases dealing with actions which were of classifications that for other and more specific reasons have never been recognized by the majority of courts as surviving at common law, or else cases which turned on matters other than the question of survivability. For example, they have in the main been cases involving statutory torts, penalties, forfeitures, punitive damages, or actions considered so exclusively personal in their nature as to be non-assignable. It is not illogical to suppose, therefore, that in those instances where they have done so, the courts that have announced the principle that causes of action created by statute do not survive unless statutory provision for their survival exists have had in mind nothing beyond the particular fact situations and statutes before them.

■ It is the substance of the cause of action asserted which determines its sur-

vivability. Schreiber v. Sharpless, 110 U.S. 76, 3 S.Ct. 423, 28 L.Ed. 65, Siberell v. St. Louis-San Francisco Ry. Co., 320 Mo. 916, 9 S.W.2d 912, 917; 1 Am.Jur. 69, sec. 80. Therefore, when the nature or substance of a cause of action places it in a category of actions which at common law survive, we feel that it should be held to survive, even though it arises under a statute and there is no statutory provision for its survival. The nature and substance of the cause of action asserted in the case at bar places it in such a category. The action is, within the strictest sense of the term, one based on a quasi or constructive contract; the duty to reimburse the State was imposed, if at all, by a remedial statute providing for only compensatory damages, and there was, in addition, a consideration moving from the State. Davis v. Town of Seymour, 59 Conn. 531, 21 A. 1004, 13 L.R.A. 210; Maryland Casualty Co. v. H. A. Moss & Son, 276 Mich. 219, 267 N.W. 819 (the dissenting opinion); 6 R.C.L. 589; 12 Am. Jur. 502–4, sec. 6. See also: 17 C.J.S., Contracts, § 6, p. 325; In re United Button Co., D.C., 140 F. 495, 502, affirmed, 3 Cir., 149 F. 48, 79 C.C.A. 70, 8 L.R.A., N.S., 961, 9 Ann.Cas. 445; Caldwell v. Missouri State Life Ins. Co., 148 Ark. 474, 230 S.W. 566, 569; Horowitz v. Winter, 129 Misc. 814, 222 N.Y.S. 233, 235; Halkin v. Hume, 123 Misc. 815, 206 N.Y.S. 702, 703; Incorporated Town of Bennington v. First Nat. Bank of Bennington, 172 Okl. 164, 44 P.2d 872, 873; First Nat. Bank of Okmulgee v. Matlock, 99 Okl. 150, 226 P. 328, 36 A.L.R. 1088; Hertzog v. Hertzog, 29 Pa. 465. It is in no sense an action arising ex delicto, nor one to collect a penalty, a forfeiture, or punitive damages. See, for a general treatment of these subjects: 32 C.J.S. 1145; 1 C.J.S., Actions, §§ 1 f(4), 44, pp. 943, 1098; 1 Am.Jur. pp. 89, 443–4, secs. 128, 51–52; 23 Am.Jur. pp. 622, 626, 635–6, 641, 644, 655–6, secs. 27–29, 43–44, 48, 54, 64–66. Nor does the action fall within any of the exceptions, with which we are familiar, to the general rule that causes of action arising ex contractu survive at common law. See, 1 C.J.S., Abatement and Revival, § 137, p. 184.

In principle, at least, the foregoing conclusions are supported by the decision in Lokey v. State, Tex.Civ.App., 291 S.W. 966, 967, wherein the court was construing a statute which, in pertinent part, has since been re-enacted as Section 1 of Article 3196a, supra. The court expressed itself to the following effect: "In fact, article 138 above quoted *has the force and effect of an express contract by the state with appellant, as guardian of the patient,* that the state will admit him in said hospital as a public patient, but, for the expense incurred of keeping and maintaining him, the state must be reimbursed from his estate, in so far as same may be able to respond thereto. As appellant's ward has been kept and maintained at the expense of the state from the time he was admitted until the trial of this case, and there has been no reimbursement of this expense, *it is clear that an obligation for such reimbursement,* to the extent of the ability of the ward's estate to respond, *has been created* in favor of the state, and appellant, as guardian of such estate, is liable therefor to the extent that the estate is capable of responding.

■ "Articles 158 and 159, supra, point out a procedure designed to enforce, from time to time, collection of the *debt due the state* by reason of this obligation, as it arose, during the confinement of the patient in said hospital. * * * The effect of the statutes designating said procedure is only to point out a remedy for the *debt* created, and it does not follow that the remedy prescribed created the *debt*: The *debt* arose because of the services bestowed for the benefit of the patient, who was not indigent." (Emphasis supplied.) We add, in passing, that it seems to be established as the general rule in this state that a cause of action for ordinary debt survives the death of the debtor. Siese v. Malsch, 54 Tex. 355; McCampbell v. Henderson, 50 Tex. 601; Harrison v. Harwood, 31 Tex. 650; Lauraine v. Ashe, 109 Tex. 69, 191 S.W. 563, 196 S.W. 501; 1 Tex.Jur. 29, Sec. 10.

■ In further support of their contention that the State's cause of action, if any it had, abated on the death of Walter J. Mills, the appellees advance one additional argument with which we are unable to agree: the argument that Section 5 of Article 3196a, supra, itself evidences a legislative intent that causes of action arising under the statute against a parent of a patient may only be prosecuted against such parent while living and may not be maintained against the estate of such parent after death. The theory back of this contention appears to be, in essence, the maxim, "Expressio unius est exclusio alterius." In other words, it is contended that since said Section 5 specifically provides that when the courts are resorted to for the purpose of collecting claims arising under the statute "the guardian of such patient and/or other person legally liable for his support" may be cited to appear and show cause why the State should not have judgment against "him or them" for the amount due the State, and that, upon sufficient showing, judgment may be entered against "such guardian or other persons" for the amount found to be due the State, and makes no specific provision for the prosecution of a claim against the estate of a deceased parent, it impliedly excludes or exempts such an estate from liability. The contention is unsound because clearly it is not the purpose of Section 5 of the statute either to impose liability or to exempt from liability. Instead, its purpose primarily is to place responsibility for protection of the State's rights, to indicate the courts in which claims shall be filed or suits shall be brought, to indicate, perhaps, the form of citation to be issued, to provide that the form of judgments to be rendered and the manner of their collection are to be the same as in case of ordinary money judgments, and to provide a rule of evidence; the mention of defendants or persons to be proceeded against is merely incidental, and should not be given the effect contended for by appellees. The matter of liability is dealt with in sections 1, 2, and 4 of the statute, and we think it clear that those sections are the only ones intended to affect the subject. The maxim above referred to is a mere rule of construction and will not be applied when its application would have

the effect of thwarting the legislative intent as made apparent by the entire statute. 39 Tex.Jur. 188, sec. 100. Had the Legislature intended in Section 5 of the statute to deal with the matter of survival of causes of action, or had it conceived itself as doing so, we have no doubt it would have employed language more appropriate to the subject. In the absence of such language, we feel constrained to hold that if the survival of causes of action arising under the statute was a matter of legislative concern or consideration, the Legislature must have intended that the matter be left to judicial determination under established principles of law.

██ To the extent it intended by its third conclusion of law to hold that merely because George Mills had reached his majority before being committed to the hospital, or that because Walter J. Mills was not legally liable for George's support at the time George was so committed, or that because of these circumstances combined, Walter J. Mills was not liable under the statute for George's support, maintenance and treatment in the hospital, the trial court again fell into error. The liability imposed on a parent by Section 2 of the statute for the expense of maintaining his or her child in a state hospital is conditioned on neither the age of the child nor an existing legal duty on the part of the parent, otherwise imposed, to support and maintain such child, but alone upon the combination of circumstances that the child has not a sufficient estate of his own out of which the State may be reimbursed, and that the parent is financially able to pay for such maintenance.

██ Said Section 2 provides that where the "patient" has no sufficient estate of his own he shall be maintained at the expense of his father or mother, among others, if they are able to pay such expense. As used, the word "patient" is an all-inclusive designation which as aptly describes an adult as it does a minor, and there is no suggestion of anything which would justify our undertaking by construction to limit it so as to make it apply to only the latter. There is likewise no justification and no basis for any attempt to make liability outside the statute a condition precedent to liability under it, because under the common law, as construed and applied by our Texas courts, the State cannot compel anyone to reimburse it the expense of maintaining a demented person. This is the inescapable import of the decision in Wiseman v. State, Tex.Civ.App., 94 S.W.2d 265, 266, writ refused, wherein, while holding that not even a patient's own estate is liable at common law to reimburse the State for the patient's maintenance, it was said: "This court has reached the conclusion that the right of the state to reimbursement for care and maintenance of demented persons did not exist at common law, and that the state's right and remedy therefor existed, and has ever existed, by reason only of the statutes enacted for that purpose." The concept of the common-law rule as there expressed seems also to represent the majority view elsewhere. 44 C.J.S., Insane Persons, § 75b, p. 177. In the same case, the court also expressed itself as follows: "But, whether or not the state's right of reimbursement existed at common law prior to the enactment of statutes therefor, when the Legislature passed statutes comprehending the entire subject of the establishment, maintenance, and operation of a system of asylums for the insane, and created the right of action in the state to restricted reimbursement for the expense of caring for solvent lunatics, the passage of such legislation had the effect of superseding all previous systems and laws, whether common or statutory, respecting the same subject." Article 3196a, supra, was enacted at the first session of the Legislature which convened after the foregoing case was decided, and we have no doubt that by it the Legislature intended to remedy the hiatus in the law that was made apparent by the decision of the case. The Legislature intended to create liability where it recognized none existed in the absence of a statute, and it must also have realized the necessity of making the statute self-sufficient. Therefore, the only persons to whom Section 1 of the statute, in defining

indigent and non-indigent patients, can logically have reference as being "legally responsible" or "legally liable" for a patient's support are those persons on whom the statute itself imposes liability, or who have in some manner within the contemplation of the statute become liable to the State for the patient's maintenance in a state institution. Only patients, as such, are mentioned in the statute, and liability to the State for their maintenance exists only under the statute. Therefore, neither the language nor the purpose of the statute warrants the conclusion that liability attaches under it to only such persons as would be legally liable for the patient's support if such patient were not in the hospital.

■ The authority of the Legislature to impose liability on parents for the maintenance of their demented children, irrespective of the age of the children, is not questioned by appellees; nor do we think it questionable. Statutes similar to the one under consideration, and which have been construed as making the parents liable for the maintenance of their adult children, have been consistently held valid in other jurisdictions. Annotations in 1 A.L.R.2d 912, et seq.; 44 C.J.S., Insane Persons, §§ 75(2) (a), 75(2)bb, pp. 178, 180.

■ As already indicated, a parent's liability under Article 3196a, supra, is not absolute but conditional. His ability to pay, concurring with the fact that the patient has not a sufficient estate of his own, is a condition precedent to liability. His ability to pay must also be co-existent with the maintenance of the patient. In other words, the only expense of maintenance for which a parent becomes liable is that incurred by the State at a time when the parent is then presently able to pay the expense of maintaining the patient. While there are decisions to the contrary, In re Geisler's Estate, 76 Pa.Super. 560; In re Martin's Estate, 4 Pa.Dist. & Co. 31; In re McChesney's Will, 177 Misc. 731, 31 N.Y.S.2d 745, the weight of authority supports the view here expressed. See: Hodson v. Stapleton, 248 App.Div. 524, 290 N.Y.S. 570; Klebes

v. Condon, 260 App.Div. 238, 22 N.Y.S.2d 86; Nixon v. McCoy, 155 Minn. 175, 193 N.W. 40; State v. Whitver, 71 N.D. 664, 3 N.W.2d 457; Inhabitants of Templeton v. Stratton, 128 Mass. 137. A different construction can hardly be placed on the statute, because at any time when the parents are financially unable to pay for maintenance of the patient, and there is no one else legally responsible therefor, and the patient has no property of his own and is himself unable to reimburse the State, the patient is an indigent patient as defined in Section 1 of the statute; and, without conferring on the State any right to reimbursement, the statute itself expressly provides that this class of patients shall be supported at the expense of the State.

■ Since the parent's ability to pay is a condition precedent to his liability, and establishment thereof is essential to the State's right of recovery, the burden of proving such ability is on the State. Nixon v. McCoy, 155 Minn. 175, 193 N.W. 40; Cherokee County v. Smith, 219 Iowa 490, 258 N.W. 182; 44 C.J.S., Insane Persons, § 75(3) (c), p. 186.

■ The appellees argue that no cause of action accrued in favor of the State against Walter J. Mills during his lifetime because no investigation such as is provided for in Section 3 of the statute was ever conducted, and no contract such as is provided for in Section 4 of the statute was ever entered into; but with this argument we are unable to agree. We do not consider either an investigation in county court touching the parent's liability and the other matters mentioned in Section 3, or a contract between the parent and the State a condition precedent to the parent's becoming liable and to accrual of the State's right of action, or as being essential to the State's right of recovery, but are of the opinion that when in reality a patient has not a sufficient estate of his own to reimburse the State the expense of his maintenance, and the parent is able to pay such expense, the parent ipso facto becomes liable to the State and the State's cause of action accrues. Proof of these facts giving rise to the

State's cause of action need not be made until the State undertakes to enforce its right of recovery, and may be made as original proof in whatever court has jurisdiction of the action which is brought.

Section 3 of the statute makes no provision for any judicial determination of the matters therein mentioned; it merely makes available to representatives of the State, for purposes of discovery, and in circumstances where jurisdiction would not otherwise attach, a forum in which witnesses may be compelled to appear and testify under oath, and to divulge information possessed by them, concerning the matters under· investigation. The information thus gained is for the benefit of the State's representatives, and is to be appraised by them for the purpose of determining whether in their judgment the State has a cause of action or has one worth pursuing. If the State's representatives can obtain the necessary information in some other manner, resort to the county court is not necessary; it is optional, not mandatory. Section 4 merely provides a means whereby persons not under the compulsion of the statute may, if they choose, become legally liable to the State for a patient's maintenance, and whereby persons who are made liable by the statute may, with the consent of the State, render certain, and even restrict, the extent of their liability. There is nothing in it to suggest that an express contract between the State and the person it seeks to hold liable is in every instance necessary before liability attaches.

 The foregoing conclusions make apparent the fact that of the various issues presented by the pleadings and the evidence, the controlling issue was that of whether, during his lifetime and concurrently with the maintenance of his son in the hospital, Walter J. Mills was financially able, within contemplation of law, to pay for such maintenance. The trial court failed, as we have already stated, to make a finding on this issue, and such failure now poses a question as to the disposition to be made of the appeal. The mere fact that the trial court erred in its conclusions of law,

and assigned wrong reasons for the judgment it rendered, does not of itself necessarily require reversal of the judgment. Andrews v. Key, 77 Tex. 35, 13 S.W. 640; Gulf Land Co. v. Atlantic Refining Co., 134 Tex. 59, 131 S.W.2d 73, 84. However, before a judgment will be affirmed in such circumstances it must be correct under some applicable principle of law; and, as was held in the latter of the two cases just above cited, where, as in this instance, the trial court has filed findings of fact and conclusions of law, a reviewing court "will not determine a material issue of fact and render judgment thereon, when such issue was not passed on or considered by the trial court", and "will not consider other controverted fact issues not considered by the trial court to uphold such judgment." In order to say that the judgment in this instance is correct, we should have to hold that there was no evidence on behalf of the State sufficient to raise a fact issue as to the ability of Walter J. Mills to pay for his son's maintenance during any of the time the son was in the hospital after Article 3196a, supra, became effective. We would not be justified in so holding, and so the judgment must be reversed.

 The State urges that judgment be also here rendered in its favor, but this request is denied it. The mere fact, as stipulated, that during all the time his son was in the hospital Walter J. Mills owned property, or its equivalent in kind, which shortly after his death was appraised as having a value in excess of $21,000 does not, standing alone, conclusively prove that during all of said time he was necessarily able, within contemplation of law, to pay for his son's maintenance. A variety of things may have rendered him otherwise; and since Article 3196a had not been previously construed in the particulars here involved, and there is some indication that both the trial court and counsel may have been in doubt as to who had the burden of proof on the issue of ability to pay, and since from the record it appears improbable that the evidence touching this issue was fully developed, we feel that, in fairness, the cause should be remanded for a new

trial so that the evidence may be fully developed, and the trial court may pass on it.

In anticipation of another trial, attention is called to the fact that, while it contains a provision reserving to the State its rights under pre-existing statutes, Article 3196a, supra, does not itself undertake to impose liability on anyone for the maintenance of a patient prior to its enactment. We express the opinion, therefore, that to the extent the liability of Walter J. Mills is dependent on this article of the statutes, none attached for any period antedating the date on which the statute became effective, April 14, 1937. We express the further opinion that the fact that George Mills had already been committed to the hospital and was a patient therein before Article 3196a was enacted did not prevent liability for his maintenance subsequent to the effective date of the statute from attaching to his father. 44 C.J.S., Insane Persons, § 75(2) (a), p. 178.

The judgment of the trial court is reversed, and the cause is remanded for a new trial.