

# THE ATTORNEY GENERAL
# OF TEXAS

AUSTIN, TEXAS 78711

*[handwritten: Overrules M-911 where conflicts]*

JOHN L. HILL
ATTORNEY GENERAL

August 13, 1973

The Honorable Bevington Reed
The Honorable Joe Resweber
The Honorable George L. Thompson
The Honorable David Wade, M. D.
The Honorable Henry Wade

Opinion No. H-82

Re: Senate Bill 123

Gentlemen:

The 63rd Legislature adopted Senate Bill 123, sometimes known as "The 18 Year Old Bill". It will become effective August 27, 1973 and each of you has asked our opinion as to matters connected with it.

Senate Bill 123, in its entirety, is as follows:

## "AN ACT

providing that a person who is at least 18 years of age has all the rights, privileges, and obligations of a person who is 21 years of age; containing a provision that a custodian of certain property of a minor may elect not to have the provisions of this Act apply to such property; and declaring an emergency.

### "BE IT ENACTED BY THE LEGISLATURE OF THE STATE OF TEXAS:

"Section 1. The purpose of this Act is to extend all the rights, privileges, and obligations of majority to all persons who are at least 18 years of age. It shall be construed liberally to accomplish that purpose.

"Sec. 2. Notwithstanding any statutory or decisional law, or any rule, regulation, or ordinance of this state or of any political subdivision or incorporated city or town of this state, a person who is at least 18 years of age has all

the rights, privileges, and obligations of a person who is 21 years of age.  A law, rule, regulation, or ordinance which extends a right, privilege, or obligation to a person on the basis of a minimum age of 21, 20, or 19 years shall be interpreted as prescribing a minimum age of 18 years.

"It is specifically provided, however, that with respect to property held by a custodian under the Texas Uniform Gifts to Minors Act, as amended (Article 5923-101, Vernon's Texas Civil Statutes), on effective date hereof and the proceeds and reinvestments thereof, the custodian may elect not to have the provisions of this Act apply by so notifying the minor in writing, but such election may be revoked at the election of the custodian.

"Sec. 3.  The importance of this legislation and the crowded condition of the calendars in both houses create an emergency and an imperative public necessity that the constitutional role requiring bills to be read on three several days in each house be suspended, and this rule is hereby suspended, and that this Act  take effect and be in force from and after its passage, and it is so enacted."

We have been asked, first, whether or not the Bill is constitutional under Article 3, § 36 of the Texas Constitution.  If we answer in the negative, the other questions become moot.

Article 3, § 36 of the Constitution is:

"No law shall be revived or amended by reference to its title; but in such case the act revived, or the section or sections amended, shall be re-enacted and published at length."

Also to be considered is the effect of Article 3, § 35 which provides:

"No bill, (except general appropriations bills, which
may embrace the various subjects and accounts, for and
on account of which moneys are appropriated) shall con-
tain more than one subject, which shall be expressed in
its title. But if any subject shall be embraced in an act,
which shall not be expressed in the title, such act shall
be void only as to so much thereof, as shall not be so
expressed."

The initial inquiry must be whether Senate Bill 123 is an original
act, complete in itself, or an amendatory act. No section or sections
of any other Act are re-enacted or published at length by it, as Article 3,
§ 36 commands be done if an act amends other enactments.

In 1A, Sutherland Statutory Construction, (4th Ed. 1972) § 22.01, p.106
it is said:

"In determining whether an act is original or
amendatory in form the controlling test is whether
it purports to be independent of existing statutory
provisions. It may, in fact, add new regulations
to fields already extensively regulated by legis-
lation and to that extent amend or supplement them or
it may establish new and inconsistent procedures
which by the doctrine of implied repeal may super-
sede and repeal the existing law, but so long as it is
not specifically identified as an amending or repeal-
ing act it will be treated as an original act and
courts will not apply constitutional standards for
amendment and repeal to it even though that is the
consequence and effect of the act."

We think the foregoing passage well states the law in Texas. See Clark v.
Finley, 54 S. W. 343 (Tex. 1899); Consolidated Underwriters v. Kirby Lumber
Co., 267 S. W. 703 (Tex. Comm., 1924); Realty Trust Co. v. Lindsey, 105 S. W.
2d 210 (Tex. 1937); Baker v. State, 158 S. W. 998 (Tex. Crim. 1913); Ex parte
Wilson, 213 S. W. 984 (Tex. Crim. 1919); Terrell v. State, 228 S. W. 240 (Tex.
Crim. 1921); Davis v. State, 246 S. W. 395 (Tex. Crim, 1922); Southwestern Gas &
Electric Co. v. State, 190 S. W. 2d 132 (Tex. Civ. App., Austin, 1945, aff'd.
193 S. W. 2d 675); Thompson v. United Gas Corp., 190 S. W. 2d 504 (Tex.
Civ. App., Austin, 1945).

In our opinion, as an original act and not an amendatory act, it is unnecessary that Senate Bill 123 meet the requirements of Article 3, § 36.

The purpose of the requirements of § 35 of Article 3 of the Constitution is to give notice through the title of the Bill, both to the Legislature and the people of the State, of the subject of the proposed law and thereby to prevent the passage of a law on one subject under the guise of a title which expresses another. Lee v. State, 352 S. W. 2d 724 (Tex. 1962); Fletcher v. State, 439 S. W. 2d 656 (Tex. 1969); Harris County Fresh Water Supply District No. 55 v. Carr, 372 S. W. 2d 523 (Tex. 1963); C. Hayman Construction Co. v. American Indemnity Co. , 471 S. W. 2d 564 (Tex. 1971); Stum v. State, 208 S. W. 2d 633 (Tex. Crim. 1948).

In our opinion the title to Senate Bill 123 is sufficient to give notice of its purpose and it does meet the requirements of Article 3, § 35.

Prior to the effective date of the Probate Code in 1956, Article 4104, V. T. C. S., provided that: "Females under twenty-one years of age who have never been married and males under said age are minors." This statute was repealed by adoption of the Probate Code which contained, among its definitions in § 3, a definition of minors in § 3(t) as: " . . . all persons under twenty-one years of age who have never been married, except persons under that age whose disabilities of minority have been removed generally, except as to the right to vote, in accordance with the laws of this State."

The title to the Probate Code (Acts 1955, 54th Leg. , ch. 55) does state that one of the purposes of the Act is to define the meaning of certain words, etc. It does not, however, state that it intends to amend all statutes of the State having to do with minors and minority. Nevertheless, when the question was raised in Pittman v. Time Securities, 301 S. W. 2d 521 (Tex. Civ. App. , San Antonio, 1957, no writ hist.) as to whether § 3(t) of the Probate Code was an act of general application or limited to the Code itself, the court said that it was one of general application and that married males under 21 years of age, were adults for all purposes, not just for the purpose of the Probate Code. The decision was reaffirmed and followed in Ward v. Lavy, 314 S. W. 2d 381 (Tex. Civ. App. , Eastland, 1958, no writ) and in Travelers Indemnity Company v. Mattox, 345 S. W. 2d 290 (Tex. Civ. App. , Texarkana, 1961, err. ref'd. , n. r. e. ).

Just as the definition of "minor" contained in § 3(t) of the Probate Code was held to provide a definition for all purposes, even though it did not specifically amend any other statute, so too we are of the opinion that Senate Bill

123 does not operate to amend but rather is a general law creating an additional class of people (18, 19, and 20 year olds) who, without regard to marriage or judicial removal of disabilities, are entitled to the same rights, privileges, and obligations previously reserved to those of another class (persons 21 years of age and over), except as specifically provided otherwise in Senate Bill 123. Henceforth, § 3(t) of the Probate Code as applied by Pittman, supra, and Senate Bill 123 must be read together and applied generally in all instances which condition limitations or privileges on the minority or majority status of an individual.

The intent of the 63rd Legislature in making the age of majority 18 is further evidenced in the enactment of Titles 2 and 3 of the Family Code (Senate Bills 168 and 111 respectively) and the amendments to Title 1 of the Family Code ( House Bill 103). The Family Code now considers all persons as children or minors insofar as biological age is concerned if they are under 18 years old.

Section 404 of the Probate Code pertains to the closing of estates of decedents and the guardianship of the persons and estates of wards. It specifically provides in Subsection (b)1 that the guardianship of a minor shall be settled and closed when he dies or becomes an adult by becoming 21 years of age or by removal of disabilities of minority or by marriage.

Senate Bill 123 effects the removal of disabilities of minority of those 18 years of age or older. After its effective date, when a person becomes 18 years of age, by the specific terms of § 404 of the Probate Code, his estate shall be settled and closed. There is no conflict.

Senate Bill 123 does not require that "21 years of age" in these two sections of the Probate Code be replaced by "18 years of age". It is to be read with but does not amend these two sections.

Mr. Alton Griffin has posed questions concerning the effect of the Bill upon the Jury Wheel Law, Article 2094, Vernon's Texas Civil Statutes.

Article 2133 as amended in 1969 (Acts 1969, 61st Leg., p. 1364, ch. 412) provides that "all persons both male and female over twenty-one (21) years of age are competent jurors, unless disqualified under some provisions of this chapter . . . . " This, in our opinion, extends a right, privilege or obligation to a person 21 years of age, and under the specific provisions of Senate Bill 123, persons 18 years of age or older will be, therefore,

qualified jurors. Article 2094 as amended in 1971 provides that between the first and fifteenth days of August of each year the jury wheel shall be reconstituted "using as the sole and mandatory source, all names on the voter registration lists from all precincts in the county."

In our opinion the names of all registered voters, including 18 year olds and those older, should be included in reconstituting the jury wheel this year. If called to serve before Senate Bill 123 becomes effective, those under 21 years should be excused from jury duty. Attorney General Opinion M-911 (1971) is overruled; the law has changed.

Dr. Wade has asked:

"In what respect, if any, will the provisions of Senate Bill 123, 63rd Legislature, affect the liability of parents under the provisions of Section 21, Article 3871b?"

The section cited (amended in 1967 ) provides, in part:

"(a) The parents of a mentally retarded person under twenty-one years of age who is a student in a state school operated by the Texas Department of Mental Health and Mental Retardation shall pay, if able to do so, such portions of the cost and support and maintenance of the mentally retarded person as may be applicable under the following formula: [dependent upon net taxable income] . . . .

"(b) Parents of a mentally retarded person who is twenty-one years of age or older shall not be required to pay for his support and maintenance in a state school as a student, but the mentally re-tarded person and his estate shall be liable for his support and maintenance regardless of his age . . . ."

. . .

"Unpaid charges for support and maintenance accruing after the effective date of this amendment due by parents for the support and maintenance of

> mentally retarded persons who are minors and stu-
> dents in state schools shall be a claim in favor of the
> state for such support and maintenance, but only to
> the following extent: . . .
>
> "After a mentally retarded person who is a
> student in a state school reaches 21 years of age the
> cost of his support and maintenance may be deter-
> mined under rules and regulations adopted by the
> Texas Board of Mental Health and Mental Retardation
> provided that charges for support and maintenance
> shall not exceed the actual cost of such support and
> maintenance and the costs determined under such
> rules and regulations shall constitute a claim by the
> state against the entire estate or any property of the
> mentally retarded person including but not limited
> to any share he may have by gift, descent or devise
> in his parents' estates or any other person's estate. "

It is obvious from a reading of the statute that the amount by which the retarded person's estate can be made liable for his care while at the school literally depends upon his age. The dividing line is 21 years. When he reaches that age the obligations of his estate change. Senate Bill 123 operates to charge a person in like circumstances, but who is 18 years old rather than 21, with the same obligations as the 21 year old.

The liability of persons for the cost of care for incompetents at State institutions is purely a matter of statute; the common law imposes no duty upon parents (or upon the estates of incompetents) to reimburse the State for the cost of caring for incompetent children, under age or not, at State institutions. See Wiseman v. State, 94 S. W. 2d 265 (Tex. Civ. App., San Antonio, 1936, writ ref'd.); State v. Stone, 271 S. W. 2d 741 (Tex. Civ. App., Beaumont, 1954, no writ); State v. Morris, 303 S. W. 2d 802 (Tex. Civ. App., Eastland, 1957, writ ref'd). Also see State of California v. Copus, 309 S. W. 2d 227 (Tex. 1958).

In other words, unless Article 3871b, § 21 specifically makes it so, the liability of parents for the cost of care for their incompetent children in State institutions does not depend upon the legal infancy of the child.

Before the statute was amended [Acts 1967, 60th Leg., p.1935, ch.725 §1], it was clear that parents were liable regardless of the age or status of the child. Section 21 then read (in part):

> "The parents, spouse and the estate of a
> mentally retarded person . . . shall pay, if able
> to do so, for the support, maintenance and treat-
> ment of the person . . . ."

When § 21 was amended in 1967, a new clause specified that as to charges accruing after the effective date of the amendment, unpaid charges due by parents for the support and maintenance "of mentally retarded persons who are minors" would be a claim in favor of the State only to the extent they could be collected from the property or estate of the retarded person.

Unless it were intended that "under 21 years of age", as used in the amended statute have the same meaning as "legal infant", then charges would be due by a parent for the support and maintenance of a retarded son or daughter aged 17 years of age who was married (and thus, not a minor), which charges could, if unpaid, be a claim in favor of the State against persons or property other than the property or estate of the in-competent (the parents). Whereas, if the 17 year old son or daughter had never been married (a minor), any unpaid charges for his or her care could be a claim only against the child's property or estate.

We do not think the Legislature intended to place a more onerous burden upon the parents of children who have lost their disabilities because of marriage, or by judicial removal, than on parents of minor children. We are compelled to think the words "minors" and "persons under 21 years of age" are used interchangeably in Article 3871b, § 21 to signify that different treatments are to be accorded parents and their children, depending upon the legal capacity of the child.

Even before Senate Bill 123 was enacted, therefore, ambiguous language in Article 3871b, § 21 required construction. Senate Bill 123 did not make the construction necessary and does not change it. Without ref-erence to Senate Bill 123, in our opinion, the words "21 years of age" in that context have reference to "legal infancy". Inasmuch as "legal infancy" will be differently defined after Senate Bill 123 becomes effective, the effect of Article 3871b, § 21 will be changed to that extent. In our opinion,

parents of incompetent children 18 years of age or more will have no obligation to the State for their support while in State schools, and the cost of their support and maintenance may be determined under rules and regulations by the Texas Board of Mental Health and Mental Retardation, as provided.

Dr. Reed, Commissioner of the Coordinating Board, Texas College and University System, has asked for an interpretation of the non-resident tuition provisions of Subchapter B of Chapter 54.

The tuition for institutions of higher education described by § 54.051 of the Education Code is made to depend, in most instances, upon the residence of the student. Residence, in turn, is governed by the provisions of § 54.052. The residential status of individuals under 21 years of age is made to depend upon the residence of their families, but that of individuals 21 years of age or older depends upon their own circumstances.

Assuming the constitutionality of a distinction between a person who has been a resident twelve months and one who has been a resident for a lesser period of time, it is our opinion that these statutes extend rights and privileges depending upon a minimum age and that the provisions of Senate Bill 123 operate to apply the same standards, rights and obligations to persons at least 18 years of age as are by those sections of the Education Code applied to persons 21 years of age.

Finally, the county attorney of Harris County has asked whether a county clerk may issue a marriage license to a male eighteen years of age without parental consent after Senate Bill 123 becomes effective. Section 1.51 of the Family Code, as it presently exists, provides that except with parental consent, a county clerk will not issue a marriage license to a male applicant under 19 years of age or a female applicant under 18. House Bill 103 of the 63rd Legislature has amended this, effective January 1, 1974, to the effect that the county clerk shall not issue a marriage license if either applicant is under 18 years of age.

In addition, Article 1.52 of the Family Code presently provides that if the male applicant is under 19 years of age the county clerk will issue the license if parental consent is given. It,too, was amended by House Bill 103 to authorize issuance of a license with parental consent to minors over 16 but under 18 years of age.

Marriage without parental consent is a right or privilege, and since here it is presently made contingent upon a minimum age of nineteen, it is our opinion that Senate Bill 123 would affect the age at which persons may marry without parental consent.

It is our answer then to Mr. Resweber's question that the county clerk may issue a marriage license to males 18 years of age without parental consent after Senate Bill 123 becomes effective.

### SUMMARY

Senate Bill 123 is not an amendatory act but is an original and complete enactment which complies with all constitutional requirements. It has the effect of emancipating all persons aged 18 years or more from disabilities of infancy to the same extent that other law emancipates older persons; it co-exists with other emancipatory statutes but is independent of them. After its effective date, August 27, 1973, persons who are 18 years old will be adults for all purposes, save for eligibility to remain beneficiaries under the Texas Uniform Gifts to Minors Act. All other inconsistent laws or parts of laws which make distinctions of legal infancy on a different basis are repealed by necessary implication.

Very truly yours,

JOHN L. HILL
Attorney General of Texas

APPROVED:

LARRY F. YORK, First Assistant